AMOS MORRILL v. J. M. BARTLETT ET AL.

(Case No. 4820.)

1. MISTAKE — AGREEMENT.— Plaintiff, whose land was claimed adversely, agreed to the appointment of parties to survey and settle the location of a line, under the belief that the controversy only involved the true location of that line, which was a common line between old surveys which had been patented. The adverse claimant had procured a patent to a narrow strip of land which he supposed to be between the old surveys which called for each other, and the agreement for parties to settle the boundary was made by plaintiff in ignorance of the character of defendant's claim, and also in ignorance of the fact that the field notes of his own survey were not correct in his patent. *Held*, that plaintiff was entitled to a decree canceling the agreement.

2. MISTAKE — SURVEY.— A mistake in the description of land as given in a patent therefor, may be corrected by the field notes of the survey as actually made on the ground, in connection with the map thereof required by statute, as they appear among the records of the county and in the general land office.

3. COMMISSIONER OF GENERAL LAND OFFICE.— The rights of a party acquired by virtue of a location and survey of a valid land certificate and return of field notes to the general land office, cannot be affected by the action of the commissioner in changing or leaving out from the patent any of the calls of the survey. In such case, the location of the land is determined by the field notes of the survey as made on the ground, and not by the patent.

4. DIGNITY OF CALLS IN A SURVEY.— A call for a common line between two surveys and for common corners, will, when they are plotted on the county map by the surveyor who surveyed both, as contiguous surveys, control a call for distance.

5. SAME.— One of such surveys called for the line of the other at one thousand four hundred and seventy varas, when the true distance was one thousand seven hundred and eighty-two varas, being an excess of three hundred and twelve varas. A subsequent locator acquired no rights by location, survey and patent of the excess, and this though the call of the old surveys for a common line and common corners had been omitted in the patent through mistake, when appearing in the field notes of the survey returned to the general land office, and of record in the county.

6. CLAIM FOR IMPROVEMENTS.— A claim under the statute by a defendant sued for land, that he had made permanent and valuable improvements thereon, cannot be regarded when there is no evidence that he ever paid anything for the land, or received a deed therefor, and when he was informed of the controversy which jeopardized his possession before improving the land.

APPEAL from Red River. Tried below before the Hon. R. R. Gaines.

This suit was brought April 14, 1882, by Amos Morrill against J. M. Bartlett and David Rainey to cancel and annul an agreement made between plaintiff and Rainey, to have surveyed and established the north line of a sixteen labor survey in the name of Price, and claimed by the plaintiff. He alleged that he knew that Rainey claimed land supposed to conflict with the Price survey, but that he did not know when he made the agreement that Rainey was claiming for his north line the line of a survey called for as the north line of the Price survey. Rainey was really claiming under the survey and patent of a strip of land about three hundred and twelve varas wide, which was covered by the calls of the Price field notes, which called for the Gooch line and corner as common to both surveys, but which calls had not been carried into the patent of the Price survey. The facts in evidence established the claim of plaintiff, that his agreement was made in ignorance of the real nature of Bartlett's claim, and the decree canceled the agreement. Plaintiff also prayed for a decree canceling the patent to the strip of land claimed by defendants. In addition to exceptions to the petition, which were overruled, the defendant Bartlett set up adverse possession of the land in controversy in good faith for one year before suit brought, and that he, and those under whom he claimed, had made permanent and valuable improvements on the same, amounting in all to about $1,600 in value.

The plaintiff read in evidence:

1st. A patent from the state to John Price, dated February 14, 1852, issued on a survey made in 1842, describing the survey as follows, viz.: "Beginning at a mound, the southeast corner of the B. Gooch survey; thence west at three thousand six hundred and ninety-one varas, a stake and mound; thence north at one thousand four hundred and seventy varas, a stake and mound; thence west at three thousand seven hundred and twenty-four varas, a stake," etc., the rest of the description not being material.

2d. A deed from Price to plaintiff, dated in 1854, in which the land is described as follows: . . . "Beginning at a mound, the southeast corner of B. Gooch survey; thence west with B. Gooch's boundary three thousand six hundred and ninety-one varas, to his southwest corner, stake and mound; thence north with his west boundary one thousand four hundred and seventy varas, to stake and mound (being corner of B. Gooch also); thence west," etc., the rest of the description not being material.

3d. Plaintiff then offered the field notes of the John Price survey from the general land office, as follows: " Commencing at a mound the southeast corner. of B. Gooch; running thence west with B. Gooch's south boundary three thousand six hundred and ninety-one varas, *to his southwest corner*, stake and mound; thence north with his west boundary one thousand four hundred and seventy varas, to a stake, and being corner of B. Gooch also; thence west three thousand seven hundred and twenty-four varas, to stake and mound," etc.

The relation of the surveys will be seen from the plot:

It was admitted by the parties in open court that the west boundary line of the B. Gooch survey is one thousand seven hundred and eighty-two varas in length.

Plaintiff testified that he purchased the Price survey in 1854; that in 1879 he was informed that Rainey claimed the northern portion of the Price tract, which plaintiff had contracted to one Kelly; that until six months before trial he had no other knowledge of the land than such as he obtained from the county map, which showed the Price survey completely surrounded by other surveys patented, and he understood that Rainey was willing to have the true boundary line of the Price survey established, and did not claim any land included in the Price. He therefore agreed with Rainey to appoint two persons to establish the Price line, and which, when established,

should be the true line, believing that the description of the Price survey contained in the patent was correct, and he did not discover his mistake until he saw the field notes in the county surveyor's office.

Young testified that he had been county surveyor of Red River county for many years, and that the map (a plot of which is given) was correct. It showed the survey of Price connecting with the Gooch and Poor surveys until within a few years, when defendants' claim was made, and then the strip in controversy, three hundred and twelve varas wide, was patented to the heirs of James Ward and was plotted on the county map between the Price and I. S. Poor and William Walker surveys.

Rainey admitted that the county map, when defendants' survey was made, showed the north boundary of the Price survey and the south boundary of the Poor survey to be identical; that he, as county surveyor, made the survey under which defendants claimed, at the instance of one Bagby, and that he was interested in the certificate.

In June, 1880, a survey was made under the canceled agreement to establish the line, and the north boundary of the Price fixed as claimed by defendants. The defendant Bartlett testified that he had purchased before the line was fixed under that agreement, but knowing the controversy, did not improve until the line was run under the agreement, and that he afterwards constructed the improvements for which he claimed to be allowed.

There was nothing in the record to show that this defendant ever paid anything for the land or that he ever received a deed therefor. It was shown that the Poor survey was made by the same surveyor who surveyed the Price; that it was made after the Price, and called for the Price north boundary as its south boundary line, and this connection was always shown on the county map until defendants' location. The extreme southwest corner of the Gooch survey was a living corner.

A jury being waived, the court found issues of fact as to the titles and agreement, as follows:

It found that the agreement to have surveyed and established the north boundary line of the Price survey was made by mistake and in ignorance of the character of Rainey's claim, and the decree canceled the same. It found that the John Price survey did not embrace the land in controversy, and that Bartlett, having purchased of Rainey the land sued for, awaited the establishment of the line under the agreement, and made his improvements afterwards, ignorant of the mistake on Morrill's part, which vitiated the agreement.

It found his improvements worth $1,975, and that the land without improvements was worth $1,025. On the foregoing facts as found, judgment was entered for defendants.

*Taylor & Chambers*, for appellant.

*Sims & McDonald*, for appellee.

I. The ruling of the court below in admitting evidence in regard to improvements was correct, on two grounds, viz.: First, under art. 4813, R. S., suggesting improvements; and second, under the plea of not guilty, for the purpose of showing that the appellant was estopped. Mayer v. Ramsey, 46 Tex., 371.

II. If the third finding of the court be correct, it settles every question in the case. The original survey made for Price in 1842 runs the first north line calling for a "stake and mound, being corner of B. Gooch also." The patent issued in 1852 leaves out the following portion of the above call: "being corner of B. Gooch also." The field notes of the original survey make the distance one thousand four hundred and seventy varas, when it is in truth one thousand seven hundred and eighty-two varas, and they embrace two hundred and five acres more land then the patent calls for. The patent describes the Price survey correctly, and, as will be seen by a simple calculation, contains within the fraction of an acre the amount of land called for in the patent, to wit, sixteen labors and six hundred and sixty-six thousand six hundred and sixty-six square varas. Indeed, the field notes of the original survey themselves are not consistent, and show the mistake in calling for B. Gooch's corner. The length of the first south line is correctly given in the original survey. Run the first north line a distance of one thousand seven hundred and eighty-two varas and the northings and southings do not agree. The northings will be three hundred and twelve varas more than the southings. The patent being correct and the original survey incorrect, it is to be presumed that the field notes of the original survey were corrected prior to the issuance of the patent.

III. Should it be held — a scarcely supposable proposition — that an obviously incorrect original survey will control a correct patent, still the judgment of the court is correct on the sixth finding. Love v. Barber, 17 Tex., 312.

WILLIE, CHIEF JUSTICE.— The court below, passing upon the law and the facts of this case without the intervention of a jury, held that the land in controversy was not included in the Price survey,

and that Bartlett was entitled to recover the value of his improvements as a possessor in good faith. The question of the validity of the agreement, which the suit was brought to cancel, was decided in favor of appellant, and the agreement was set aside. In the opinion rendered by the supreme court at Tyler, the decision of the district judge was approved so far as it canceled the agreement, but the judgment was affirmed because the appellant did not offer to do equity by tendering Bartlett the value of his improvements; and it was also intimated that the court might not agree with the district judge in holding that the land in controversy was not included in the Price survey. We concur in the former opinion of the court in so far as it holds that the agreement should be set aside, and we are also clearly of the opinion that the land was embraced in the survey under which appellant claimed.

Running the lines of that tract according to the field notes of the survey made by the proper officer for the original grantee, upon which the patent issued, they include the land in controversy beyond all doubt. If we run them according to the calls in the patent, and allow the distance of the second and fourth lines to control, it will not be thus included. The only difference between the language of the survey and that of the patent is in the use of the words, "being corner of B. Gooch also," in the former as part of the description of Price's third corner, which words are left out in the patent. The field notes in the original survey describe this corner with more particularity than do those contained in the patent, but there is not necessarily a conflict between the two. No intention is shown in the patent to change the locality of this corner, but a part of the words describing it were evidently left out by mistake in copying the field notes into the patent. If a mistake, the proper mode of correcting it is by a resort to the actual survey made upon the ground, recorded in the county surveyor's office, shown upon the county map, and filed amongst the records of the general land office. If recourse is had to these, they all concur in establishing the disputed corner at the point claimed by appellant, and include the land sued for within the boundaries of the Price grant.

It is not disputed but that this grant was located upon vacant land by virtue of a genuine certificate; that it was legally surveyed by the proper officer; that it was correctly traced upon the county map in the surveyor's office; that the certificate, survey, field notes and a copy of the map were duly filed in the general land office; and that, according to these, the land had a common corner with the Gooch survey at the end of its second line. These facts established,

and no errors in the field notes being shown, nor other reason why the patent should not issue in accordance with the actual survey made, the grantee had a just and equitable right to the whole land thus surveyed and described; a title upon which he could recover, against any party claiming under a junior grant, any portion of the land included within the boundaries of such survey. Not only so, but he became authorized to have his title evidenced by a patent describing the land precisely as surveyed, and to compel the commissioner of the general land office to issue it to him. Commissioner General Land Office v. Smith, 5 Tex., 471.

If, on the other hand, there was an error in the survey, the law pointed out the course to be pursued by the commissioner in order to have the same rectified, and as he did not pursue such course, we must presume that there was no necessity for his so doing. The law nowhere recognizes his right to change the calls of the field notes, or leave out any portion of them, so as to grant to the patentee a different tract of land from that actually run out by the surveyor.

There can be no doubt but that Price or his vendees could have recovered against Ward or his vendees upon the certificate and the land surveyed by virtue of it, before the issuance of the patent. There can be no doubt, also, but that they were entitled to a patent describing the land exactly in accordance with such survey, and could have compelled the commissioner to issue it to Price. How, then, can they be debarred from such recovery by a mere failure on the part of the commissioner to perform the ministerial duty of issuing the patent in accordance with the survey?

As between Price and the government he would certainly be entitled to the land surveyed, and to have the whole of it patented to him. If as to third parties he is deprived of his right to claim any portion of it, because the patent fails to include it, this must occur by reason of want of notice to them of the true boundaries of the land as described in the original survey. What effect such want of notice might have upon the rights of the patentee, it is not necessary to consider in this case.

The interested parties had full notice of the true boundaries of the land long before they made any location upon that part claimed to be vacant. Rainey, who did the locating, was at the time surveyor of the county and custodian of its land records, and had been for a long period of time after the Price survey was made, its field notes filed, and its shape delineated upon the county map. The deed from Price to Morrill describing the land as in the original field

notes had been on record in the county for twenty years.   Adjoining surveys called for its lines as shown by the map and field notes, and no vacancy between it and them appeared to be open for location.   Rainey, as he himself admits, whilst surveyor became interested in making a location on a portion of the land as thus designated, and, in order to create a vacancy, altered the county map so as to bring the upper line of the Price survey three hundred and twelve varas below where it was placed by the original field notes, but where it might well be located under the patent.   He then placed the Ward certificate upon the vacancy for the benefit of himself and partner.   These circumstances show that notice was brought home to the owners of the Ward certificate of all the rights of the owners of the Price tract, and they cannot profit by any discrepancies between the survey and the patent.

In Barnard v. Goode, 44 Tex., 638, this court gave effect to the description of a line contained in the original survey as against that shown by the patent upon a conflict between the two.   Upon the face of the patent it was evident that the survey would not close; whereas in the original field notes the lines formed a square.   This was sufficient notice that the patent did not describe the land accurately, and necessitated a search into the original survey for a proper description.   It was a question of notice at last.   In this case the claimants under the Ward grant were as fully aware of the defective description in the patent as if shown on the face itself.

As to Bartlett there is no proof in the record that he ever paid anything for the land or received any deed for it, and he was fully aware, according to his own testimony, that there was a controversy as to the north line of the Price grant before he improved the land claimed by him.   He is clearly not within the position of an innocent purchaser without notice.   We think that, under the facts proven below, the court should have found that the land in controversy was within the lines of the Price survey.   If the original survey was erroneous in its description of Price's third corner, and the commissioner of the general land office had the field notes returned to the surveyor's office and corrected, and if in consequence of such correction the call for Gooch's corner was omitted in the patent, the appellee will have an opportunity of showing such facts upon another trial.

As this disposes of the present appeal, it is hardly necessary to consider the question of Bartlett's right to recover the value of his improvements.   It may be added, however, that the evidence was not sufficient to show him a purchaser in good faith.   In addition

to want of proof of title or payment of purchase money, it does not appear that he was, at the time of improving, ignorant of the mistake for which the agreement was set aside. This was in substance an action of trespass to try title, and Bartlett was entitled to recover therein the value of his improvements by bringing himself within the rule of the statute regulating such actions. There is no requirement that a plaintiff in such action shall tender the value of such improvements or lose his land. It is sufficient if he pay for them within one year after judgment.

We conclude that the motion for a rehearing must be granted, and the former judgment of affirmance set aside, and the judgment below reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 16, 1883.]

ON MOTION FOR REHEARING.

In this cause, on the 29th of March, 1883, Sims & McDonald, counsel for appellees, filed a motion to set aside the judgment granting a rehearing and reversing and remanding the cause, based on the alleged connection of the Hon. Asa H. Willie, chief justice, with another cause, as counsel for Amos Morrill, which cause had been dismissed before the institution of this suit, but which involved the same issues, and title to the same property. Attached to the motion was a transcript of the proceedings in the suit referred to; but on inspection it appeared that the name of the chief justice was not signed to the petition in that case, but the name of Asa *M.* Willie. The same name was found signed to the original petition, which was sent for by special order of the court, and forwarded to the supreme court for inspection. How this occurred will be explained by the following affidavit of Amos Morrill, the appellant, filed in this cause March 30, 1883.

From Morrill's affidavit it appears that a name (doubtless intended for that of the chief justice, who was then a practicing lawyer at Galveston) was signed to a petition by Morrill without consulting him, or informing him of that fact, before or afterwards. The suit in which the petition was filed was begun in Clarksville, nearly four hundred miles from the residence of the judge.

MORRILL'S AFFIDAVIT.

"Having seen a petition of Sims & McDonald stating that the name of A. H. Willie is signed as attorney for the plaintiff in a case

wherein one Kelly was plaintiff and Bartlett and Rainey defend-
ants, in Red River county, I hereby certify as follows: I brought
that suit and signed the name of A. H. Willie as attorney. The cir-
cumstances relative to the cause were, that several years ago, being
the owner of sixteen labors of prairie land in Red River county, I
sold a portion of it to Kelly, giving a warranty title. Two or three
years after the sale Kelly informed me that Rainey claimed a por-
tion of the land sold to him by me, and had ordered him off. After
investigating Rainey's claim, I concluded that the only way to
ascertain the real owner was by a judicial investigation and decision.
As I was warrantor, and believed myself to be better acquainted
with the facts than any lawyer in Red River county, I was to all
intents and purposes the real plaintiff, and determined to bring the
suit myself for Kelly. But as the statutes of the United States did
not authorize a judge to act as an attorney for another party in any
court, it would be improper for me to appear as attorney for Kelly.
After writing the petition, supposing there could be no objection to
use the name of some attorney at law as attorney in the case, and
agreeably to the courtesies existing among lawyers, there being no
lawyer then present, and the name of Judge Willie being the first
one thought of, I signed his name as attorney to the petition, and
really thought no more about it, and have not thought of it till I
was reminded of it by the statement of Sims & McDonald.

"I wish now to state that I never consulted with Judge Willie rel-
ative to this matter, either before or since the transaction; never
mentioned to him that I had such a case. And while I know that
I have made myself liable to criticism for acting indiscreetly, in not
getting his permission to use his name, or informing him of it after-
wards, there can be no reflection upon Judge Willie in adjudicating
upon a different case involving the points at issue in the case above
mentioned.                                      AMOS MORRILL.

"Subscribed and sworn to before me on this the 30th day of
March, A. D. 1883. To which I certify, and add the impress of the
seal of the supreme court, at Galveston, on this 30th day of March,
A. D. 1883.                          DAN'L D. ATCHISON,
                    "Cl'k Sup. Court at Galveston."

On the 3d of April, 1883, Sims & McDonald forwarded the
following letter to Associate Justice West, which was filed among
the papers of the cause:

                    "CLARKSVILLE, TEXAS, April 3, 1883.
"Judge C. S. WEST, Austin, Texas:

"*Dear Sir* — Your favor of the 30th ult. has been received.

"In compliance with your request, we have had the district clerk

of this county to forward to the clerk of the supreme court at Austin the original papers in the case of P. L. Kelly v. J. M. Bartlett *et al.*

"We desire to state that we have never for one moment believed that Judge Willie ever had any conscious connection as counsel with this case. Judge Morrill ought, by all means, to have acquainted Judge Willie of the fact that he had appended his name as counsel to the petition.      Yours truly,

"SIMS & McDONALD."

The motion for rehearing, after being considered, was disposed of in the following opinion:

WEST, ASSOCIATE JUSTICE.— This motion is in its effect an application for a rehearing. The object of it is to induce a reconsideration of the judgment of this court, rendered in this case on the 16th of March last, reversing and remanding it.

The only ground on which this motion is based is, that the chief justice of this court, who delivered the opinion and announced the judgment of this court, had been counsel of record for the plaintiff in the case of P. L. Kelly v. J. M. Bartlett *et al.*, No. 4795, in the district court of Red River county, a case involving the same property and the same issues, the only difference being in the name of the plaintiffs.

We have given the motion a careful examination, and have taken the proper steps to have before us all evidence that could shed any light on the facts or aid us in any manner in coming to a correct conclusion.

The facts now before us, admitted by all parties to be true, and in fact uncontroverted, show that the chief justice, as a matter of fact, never had at any time any connection whatever with the case of Kelly v. Bartlett, and that his name was signed to the petition in that case without his knowledge, and the fact of the existence, even, of such a petition or suit was unknown to him until disclosed by the filing in this court of the motion now under consideration.

The fact as to the manner in which his signature appeared to be attached to the petition in Kelly v. Bartlett is fully explained in the affidavit of the appellant on file in this case, and need not be further adverted to.

The ground, therefore, upon which the motion is based is wholly untenable as a matter of fact.

It may be that the motion may be so amended as to set up other grounds on which the parties may desire to rely.

For this purpose it will be held over, and the parties allowed twenty days from this date in which to amend their motion, should they desire to do so, by setting up any additional grounds on which they may rely, and the clerk will notify them of this order.

                                            MOTION OVERRULED

[Opinion delivered April 13, 1883.]

[NOTE.— It may be proper to state that the chief justice, by his own request and desire, took no part in the consideration of this motion.   No amendment of the motion was made.— REPORTER.]