### Waco Bridge Company v. City of Waco.

#### No. 6307.

1. **Fact Case.**—See testimony held insufficient to show legal or equitable title in the plaintiff, the bridge company, in the land adjoining the bridge, and which by injunction was sought to be protected from invasion by the city for sewer and other purposes, alleged to endanger the safety of the bridge.

2. **Holding Under Deed — Practice.** — Grantors of the two acres tract claimed by plaintiff held said tract under a deed reserving streets through it, and dedicating the land so reserved to public use as streets. The work carried on by the city of Waco sought to be restrained was upon one of the streets so reserved. In the preparation for trial this deed was included in the list of title

papers furnished by the plaintiff to counsel for the city. On the trial the deed was not introduced by the plaintiff bridge company, counsel stating that the plaintiff did not claim under it. *Held*, under the circumstances the simple disclaimer of holding under the deed was not sufficient reason for excluding it when offered by the city.

3. **Effect of Recitals upon Privies.**—The deed clearly reserved and dedicated a street. If the plaintiff had accepted it, and held under it, or if it was a link in its chain of title, it was bound by it. Even if it was not a necessary link in its chain of title, if it acquired the title of those holding under it, for the purpose of quieting its title or removing clouds or conflicting claims, it must be held to have taken it with and become bound by its reservations.

4. **Same—Recitals in Deeds.**—It was sufficient and competent that the deed appeared to be one of the sources under which plaintiff claimed the land, to show the rights of the city in the streets reserved in such deed.

5. **Same—Deed by Attorneys and Power Not Shown.**—Inasmuch as the deed was not offered as evidence of title, the absence of the power of attorney under which the deed was executed was not material, nor did it affect the question of its competeny and relevancy that it was a quitclaim. The deed contained a reservation and dedication of the streets, and the grantee recognized them by accepting the deed.

6. **Power to Make Dedication.**— Where a deed executed by attorneys contained reservations for streets, it seems that only the grantors could take advantage of the want of power. Long acquiescence is persuasive of power or of ratification.

7. **Vendees.**—The vendees under a deed reserving streets can not defeat such reservation or dedication, or convey to their sub-vendee a greater right than they had.

8. **Right of Incorporated Bridge Company to Use of Streets.**— Although work of a bridge company may be necessary to the safety of the structure, it does not follow that for such purpose a public street may be occupied against the consent of the city having control of such street.

APPEAL from McLennan. Tried below before Hon. EUGENE WILLIAMS.

*Prather & Lindsey*, and *Clark, Dyer & Bolinger*, for appellant.— 1. It was error to allow defendant to introduce in evidence the deed from J. D. and D. C. Giddings to W. B. and S. B. Trice, dated January 23, 1872.

(1) For the reason that appellant had shown title in Trices, and prior possession in them of the two acres of land, all prior to the said conveyance of the Messrs. Giddings; and that it, plaintiff, held under the Trices, irrespective of the Messrs. Giddings' deed to W. B. and S. B. Trice, and did not claim under said Giddings' title, Simon Trice having purchased from A. J. Buchanan and paid the purchase money. Alexander v. Gilliam, 39 Texas, 235; Kolb v. Bankhead, 18 Texas, 232; Wilson v. Palmer, 18 Texas, 595; Duren v. Strong, 53 Texas, 381.

(2) Because it purported to be made by J. C. Frazier and S. H. Renick, attorneys in fact, and no power of attorney was in evidence, and the said deed was inadmissible in evidence without proof of the power of said

Renick and Frazier to execute same. Watrous v. McGrew, 16 Texas, 513; Wright v. Doherty, 50 Texas, 42.

(3) The deed from J. D. and D. C. Giddings to W. B. and S. B. Trice was a quitclaim deed, and a dedication of a road in same is not, in this character of conveyance, a covenant running with the land that would bind appellant, even though purchased from and held under the said W. B. and S. B. Trice, unless a valid title had been shown in said J. D. and D. C. Giddings. 2 Dill. on Mun. Corp., sec. 499; 2 Wait's Act. and Def., 706; Lee v. Lake, 4 Mich., 11; Detroit v. Railway, 23 Mich., 209.

(4) Without showing the power of attorney under which it is purported to have been made, for the reason that the attorneys in fact making such deed had no power to make a dedication of a roadway unless the power under which they acted conferred such power. 2 Dill. Mun. Corp., sec. 498.

(5) The dedication therein named is a condition subsequent, and not binding on appellant or any one else except the vendees therein named, and only subjected them to an action for damages for the breach of such covenant because of the same being a strict condition subsequent, and a covenant not running with the land. Morrison v. Chandler, 44 Texas, 24; 2 Dill. Mun. Corp., sec. 505, and note; 2 Wait's Act. and Def., 706 (sec. 2), 662 (sec. 4); Cross v. Carson, 44 Am. Dec., 742, and note; 18 N. J. Eq., 305; Wood on Nuis., sec. 247; Tied. on Real Prop., sec. 611.

2. The evidence shows, and the fact is not controverted, that the piling that was being done, and other engineering work plaintiff was attempting to do, was necessary and indispensable to the preservation and perpetuation of plaintiff's bridge property and its chartered franchise and rights and its maintenance of its duty to the public in the preservation and safety of itself as a public highway; and the court erred in not so finding and holding, as this was a material point in the case, made both by the pleadings and the evidence.

3. The evidence shows that Elm Street, as opened east of plaintiff's bridge property, owing to a defective sewerage system of the city of Waco, has been neglected by the city, has washed out, became impassable, and has become a conduit for all water accumulating easterly of plaintiff's bridge, as well as for overflow rises from the Brazos River breaking out of said stream above, and as such has become a nuisance, and has made a deep cut from the west end of Elm Street as opened by said city over plaintiff's property, and in such proximity to the anchorages and towers of plaintiff's bride as to endanger the safety of said bridge. The finding of the court on the above point is contrary to and not sustained by the evidence. Wood on Nuis., secs. 317, 777–779 (and notes), 131, 320, 329, 798, 801, 811; Ang. on Highways, secs. 268, 319.

HENRY, ASSOCIATE JUSTICE. — This suit was brought by the appellant

to restrain the city of Waco in the following respects: It charged that plaintiff acquired by purchase from W. B. and S. B. Trice, by deed dated the 19th day of May, 1876, two acres of land lying above its bridge and on the east bank of the Brazos River, on which it proposed to construct a barricade to prevent the supports upon which its bridge rested from being washed and undermined by the waters of the river, but that it was forbidden and prevented from so doing by the city.

"Appellant further averred, that appellee, during the year 1883, in the exercise of its municipal powers, did drain certain low lands or ponds lying within the corporate limits of said city of Waco, by attempting the construction of a sewer from said pond, whereby the natural drainage of said water in said pond and accumulating therein from the drainage of a large area of country was conducted into the Brazos River a few feet above the anchorages of the complainant's bridge, being conducted into said river Brazos over the said lands and property of complainant. Appellant alleged that said sewer was so unskillfully and negligently constructed by appellee, that the water from said pond, during the spring rains of 1884 and 1885, overflowed said sewer and was conveyed in a general course thereof upon appellant's property, washing out large deep gullies thereon near to and adjacent to the side anchorages of the appellant's bridge, washing away the fence of appellant and inflicting other damages upon complainant to the amount of $1000, it being averred that owing to the caving in of appellant's property and consequent injury to its freehold occasioned by said sewer, a long line of complainant's fence, to-wit, 300 feet, was thrown down, lost, injured, and destroyed, resulting in damages as aforesaid.

"Appellant averred, that appellee was maintaining said sewer in a careless, negligent, and indifferent manner, not keeping same in repair, whereby the surface waters from ponds in East Waco were diverted from their natural courses and drained upon the property of appellant, and in such a manner as to cause the earth to cave in at and around the anchorages of appellant's bridge, in a manner calculated to undermine and destroy same, one of said anchorages then being within eight feet of the wash occasioned by said defective sewer, and is threatened with certain destruction if appellee be allowed to maintain said sewer in its then bad and dangerous condition, as all rainfall of necessity finds escape through the deep channels of said defective sewer.

"Appellant averred, that the point where said defective sewer existed was the same defendant had taken possession of and was withholding and digging away and lowering, and appellant averred it could protect its property by the proposed system of barricading, but was prevented, whereby its bridge structure was at all times menaced and threatened with impending danger and disaster. Appellant prayed that appellee be required to maintain said sewer so as to result in no further injury, and

that an injunction issue to appellee enjoining it from any and all inter-
ference with appellant upon its said parcels of land, and to desist from all
further work, trespass, or injury thereto, and on final hearing for a perpetu-
ation of said injunction; and for judgment for damages and costs, etc.''

The cause was tried by the court without a jury, and a judgment, upon
the aforesaid issue, was rendered in favor of the defendant.

The judge filed conclusions of fact and law, which were substantially
as follows, upon the points which we deem it necessaay to consider in this
opinion:

"The evidence shows, however, that the old road ran on the line be-
tween what are known in the testimony as the Hood and Waco Manu-
facturing Company's tracts; that the Hood lies up the river to the north,
the other tract extending down the river past the bridge; that parts of
these two tracts now belong to the plaintiff, including all the land upon
which the highway in question is claimed; that these two tracts are held
by different titles, and each tract by more than one source and chain of
title; that the Hood tract is held by purchase from W. B. and S. B. Trice,
who held by purchase from Buchanan, and that no paper title exists of
this transfer, but that there is also in evidence a deed from D. C. and J.
D. Giddings, by attorneys Frazier & Renick, to said W. B. and S. B.
Trice; it is claimed that under said deed the bridge company is held by the
reservation and condition therein contained, among which is the follow-
ing:   'The said W. B. and S. B. Trice should open, and forever keep
open for the use of the public, three streets of 75 feet in width each, said
streets beginning at the Brazos River and running from the said river,
and parallel with the south line of said tract, through said tract to the
west line of said Trice's brick yard tract; one of said streets to be located
on the north side of said tract, one to be located on the south side, and
one in the middle of said tract;' that the present roadbed would be in-
cluded in the street located on the south side of said tract.

" From which the court concludes, that the city has the right to the
roadway, free from obstruction by the proposed piling claimed to be nec-
essary for the protection of the bridge property.   The court is of the
opinion, that the right of the bridge company to protect its towers, an-
chors, and other property by engineering works is not superior to the
city's rights under the Giddings deed; and further, that the floods of
1884 and 1885 were extraordinary and unprecedented, such as could not
have been reasonably expected in the original construction of the sewer
along Elm Street, and were the immediate and proximate cause of the
damage to the bridge property, and that this damage should not be as-
sessed against the city; that the said sewer, as now constructed, does not
endanger the property of the bridge company, and that the city should
not be deprived of its use by injunction.''

The most important question in the case is, whether or not the bridge

company is so related to the deed made by J. D. and D. C. Giddings, by their attorneys in fact, to the Trices, as to bind it by the reservation contained in that deed, and whether the deed was properly admitted as evidence against it to prove the reservation.

The plaintiff, for the purpose of showing its title to the two acres of land and its right to recover, introduced the following evidence:

1. A deed from A. J. Buchanan and wife to James Monroe, dated the 23d day of November, 1867, reciting a consideration of $2785.66⅔, conveying an undivided one-half interest to the ferry across the Brazos River connecting East and West Waco, and at the foot of Main Street in West Waco.

2. A deed from Thomas Harrison to James Monroe, dated the 1st day of May, 1870, for the recited consideration of $325, conveying a one-fourth interest in an acre and one-half lot of ground near the ferry across the Brazos River at Waco, and being above the Waco and Dallas road, including what is known as the Buchanan and Peavy grocery building and lot, east of the Brazos River.

3. A deed from A. J. Buchanan to J. H. Wilson, dated the 21st day of January, 1870, for the recited consideration of $80, conveying one equal undivided one-half interest in and to one and one-half acres lot of ground near the ferry across the Brazos River at Waco, and being above the Waco and Dallas road, including what is known as the Buchanan and Peavy grocery building and lot, east of the Brazos River.

4. A deed from J. H. Wilson to James Monroe, dated the 21st day of January, 1870, for the recited consideration of $230, conveying the land last above described.

5. A deed from James Monroe to the Waco Bridge Company, dated the 21st day of October, 1870, for the recited consideration of $2500 in the paid-up capital stock of said corporation, conveying all of the "right, title, and interest" of the grantor in a "certain one and one-half acres lot of ground near the ferry on the east side of the Brazos River, opposite the city of Waco, and lying above the Waco and Dallas road, including what is known as the Buchanan and Peavy grocery building."

6. A deed from W. B. and S. B. Trice to the Waco Bridge Company, dated the 19th day of May, 1876, for the recited consideration of $800, conveying "two acres of land on the east bank of the Brazos River above the Waco suspension bridge," and otherwise described by metes and bounds.

The plaintiff did not offer in evidence the deed from D. C. and J. D. Giddings to W. B. and S. B. Trice, but it appears from a bill of exceptions that it did, before the beginning of the trial, describe it in a memorandum which its attorney presented to the attorney of the defendant, on which an agreement was made between said attorneys dispensing with notice of the filing of that deed and some others.

The Giddings deed was read in evidence by the defendant, over the objections of the plaintiff, upon the following grounds, which are assigned as error in this court:

"1. On the ground that the Waco Bridge Company did not claim under said deed, and had shown already by proof prior possession thereto, and a claim of title in itself in another right.

"2. On the ground that said deed purported to be made by an attorney in fact, and no power of attorney was offered in evidence to show the parties executing said deed as attorneys in fact were in fact attorneys for the grantors in said deed, or had power to make same.

"3. For the reason that there is a purported dedication of right of way named in said deed, and because said deed is a quitclaim deed, the dedication is invalid as against plaintiff in that character of conveyance.

"4. For the reason that the attorneys in fact making said deed for said grantors would have no power to make the dedication to public use unless the power under which they acted expressly conferred the right upon them.

"5. For the reason that the dedication named in said deed is a condition subsequent, and is not binding on the plaintiff or upon any one else, except the vendees therein named, and only subjected them to an action for damages for the breach of said covenant, because of the same being a strict condition subsequent, a covenant not running with the land."

The plaintiff also proved by witnesses the following facts relating to its title:

It proved by A. J. Buchanan, that he and one Peavy bought the aforesaid acre and one-half of land from the original grantee of the title thereto—one Hood; that Hood executed to them a bond for title; that he, Buchanan, sold his undivided one-half interest to Simon Trice before Hood made a deed for the land; that the witness and Peavy paid Hood $80 for the land; that Trice paid for the land sold to him; that witness does not know when he made the sale to Trice; that he does not think he made him a deed, because he does not think he had one from Hood; that he thinks he only delivered to Trice the title bond which Hood gave; that Trice took possession of the land when witness sold to him.

By another witness plaintiff proved that W. B. and S. B. Trice were partners when said sale was made.

The president of the bridge company, when testifying about the acquisition of the titles to the lands conveyed to that corporation, said: "I subsequently bought all of the ferry rights out from the owners, whoever they were—the deeds will show. I told them to bunch their claims, and say how much, and I took them all in and paid the money for them."

The defendant offered in evidence a power of attorney from J. D. and D. C. Giddings to Renick and Frazier, which was excluded on objection of plaintiff, "because no notice of it had been given or waived."

This deed had been duly recorded, and seems to have been relied upon by the plaintiff before the trial as part of its evidence.

Plaintiff's only evidence of title to the entire two acres was through the deed to it from the Trices, and the Giddings deed is the only conveyance shown by the evidence to have ever been made to the Trices, or either of them. The only evidence that we find of title in the Trices from any other source was given by Buchanan. The evidence showing that he only claimed an undivided interest in one and a half acres of the land, and that he never had a deed for that, and that he made none to the Trices, but that he did convey it to another person who is not shown to have conveyed it to Trice, falls very much short of proving title in the Trices through Buchanan, notwithstanding his testimony that he made a parol sale of his interest to one of them and put him in possession. Previous to the Giddings deed the land was uniformly described as a tract containing "one and one-half acres." That deed described a tract of two acres, and the plaintiff claims in its pleadings a tract of two acres.

Under these circumstances, the mere fact that the plaintiff failed to offer the deed in evidence, and that in order to prevent the defendant from doing so it disclaimed holding under it, was properly held by the court not to be a sufficient reason for excluding the deed.

The deed clearly reserved and dedicated a street, as was contended by the city. If the plaintiff had accepted it and held under it, or if it was a link in its chain of title, it was bound by it. Even if it was not a necessary link in its chain of title, if it acquired the title of those holding under it for the purpose of quieting its title, or removing clouds or conflicting claims, it must be held to have taken it with and become bound by its reservations.

The progress of the trial had developed that the reservation in the deed to plaintiff's vendor established the public street, and was fatal to this branch of its cause. We can not attach importance to the plaintiff's mere assertion, under such circumstances, that it declined to claim under the deed. Rather than to encounter certain defeat by the reservation in the deed, the plaintiff proposed to risk defeat by the failure of his proof of title when the deed was omitted.

The plaintiff, it seems to us, failed to prove a legal or equitable title to the land, either with or without the introduction of this deed; but the use proposed to be made of it by the defendant, and permitted by the court, did not depend upon its effect in establishing plaintiff's title. It was sufficient for the purposes of this case if it appeared that it was one of the sources under which the plaintiff claimed the land. We think that the evidence abundantly sustains the ruling of the court in that respect.

It is quite likely that the failure upon the part of the defendant to give the notice of the power of attorney, for the want of which it was ex-

cluded as evidence, resulted from the plaintiff's having included it with its own evidence in that respect. But as it was not introduced as evidence of title, we do not think the absence of evidence of the power of attorney was of any importance. And the same may be said with regard to the fact that the deed to Trice was a mere quitclaim. It contained both a reservation and dedication, to which the grantee assented by receiving it.

The objection that the agents who made it did not have authority to make the reservation does not appear to be one that the plaintiff can make. It affected only the rights of the grantors, and if the authority had not been given before, they could have conferred it by ratification. There is nothing in the record to indicate that they did not confer the power originally, nor, if they did not do so, that they did not subsequently ratify it as made. The inferences are quite strong that they did do one or the other.

We are unable to see the force of the fifth objection, with regard to the dedication being a condition subsequent, etc.

If the deed had any effect, and for the purposes at least of this case we think it had, it did not convey the land in controversy to the plaintiff's vendor, but did dedicate it to a public use for all time. The vendees in the deed could not by conveying the property confer upon their vendee a title that was never conveyed to them, nor defeat the reservation expressed in the deed under which they held. It was not a question of damages.

Appellant's second assignment of error is as follows:

"The court erred in its conclusions of fact in the following particulars, as shown by the evidence in the case, viz.:

"1. The evidence shows, and the fact is not controverted, that the piling that was being done, and other engineering work plaintiff was attempting to do, was necessary and indispensable to the preservation and the perpetuation of plaintiff's bridge property and its chartered franchises and rights, and the finding of the court is contrary to said evidence.

"2. The evidence shows that Elm Street, as opened east of plaintiff's bridge property, owing to defective sewerage system of the city of Waco, has been neglected by the city, has washed out, become impassable, and has become a conduit for all water accumulating easterly of plaintiff's bridge, as well as for overflow rises from the Brazos River breaking out of said stream above, and as such has become a nuisance, and has made a deep cut from the west end of Elm Street as opened by said city over plaintiff's property, and in such proximity to the anchorages and towers of plaintiff's bridge as to endanger the safety of said bridge. The finding of the court on the above point is contrary to and not supported by the evidence.

"3. There was no legal evidence of title in the city of Waco or dedi-

cation to public use by which said city could assert such right as respects the lands in controversy, and the finding of the court in favor of dedication or right to said property is without evidence for its support."

Admitting that the work that was being done by the plaintiff to protect its bridge was necessary or proper for that purpose, it does not follow that it had the right to occupy and appropriate a street of the city without the consent of the city. It is substantially the same question raised by the first assignment.

The finding of the court upon the issue with regard to the sewer charged to have been negligently constructed and maintained by the city, is, we think, sufficiently sustained by the evidence.

The judgment is affirmed.

*Affirmed.*

Delivered June 24, 1892.