**Wilfred J. DEAN et ux., Appellants,**

**v.**

**HIDALGO COUNTY WATER IMPROVEMENT DISTRICT NUMBER TWO et al., Appellees.**

No. 13410.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 7, 1959.

Rehearing Denied Jan. 28, 1959.

Black & Stayton, Austin, Robert H. Kern, Jr., A. W. Taylor, McAllen, John W. Stayton, Austin, for appellants.

Chas. E. Thompson, Stafford, Atlas & Spilman, McAllen, Turner, White, Atwood, McLane & Francis, Strickland, Wilkens, Hall & Mills, Dallas, for appellees.

W. O. MURRAY, Chief Justice.

This suit was instituted by Wilfred J. Dean and wife, Maxine M. Dean, against Hidalgo County Water Improvement District Number Two, Delhi-Taylor Oil Corporation, Mayfair Minerals, Inc., V. F. Neuhaus, Trustee, Myrl A. Rowsey and husband, G. L. Rowsey, James H. Rowsey, Harris A. Melasky, Individually and as Trustee, seeking to recover in a trespass to try title suit, the title and possession of an undivided one-half of the mineral estate in, on and under "The North 17.75 acres of Lot 3, Block 6, Steele and Pershing Subdivision of lands in Porcion 67, and the East one-half of Porcion 66, Hidalgo County, Texas."

The trial court granted a motion for summary judgment by the defendant Hidalgo County Water Improvement District Number Two, and awarded the one-half mineral interest in dispute to that District. Dean and wife have prosecuted this appeal.

The question here is whether or not appellants made out a prima facie title to the one-half of the minerals sued for. In bringing the suit, appellants sought title to both the entire surface and minerals underlying the 17.75-acre tract, but there is actually no dispute as to appellants' right to the surface and one-half of the minerals (it is the other one-half of the minerals that is in dispute), and for this reason we treat this suit as one for only one-half of the minerals.

W. E. Pope is the common source of title to the 17.75-acre tract. The Water District brought a suit to foreclose a tax lien on the 17.75-acre tract, and while the suit was pending W. E. Pope and others conveyed the tract to the Water District, nevertheless, the Water District proceeded to foreclose its lien and to have the 17.75-acre tract sold at public sale. W. E. Pope bought the tract, he being the highest bidder therefor. He paid the $500 which he bid, and received a Sheriff's Deed to the entire 17.75-acre tract as a result of this public sale. Thereafter, the McAllen Independent School District brought suit to foreclose a tax lien upon the 17.75-acre tract against W. E. Pope, and also made the Water District a party.

The property was sold under a judgment of foreclosure in that suit and the 17.75 acres was purchased by the School District. Thereafter, the School District sold the surface rights and one-half of the mineral estate to one Emil Richard. This transaction was accomplished by three deeds. First, the School District conveyed the entire 17.75-acre tract to Richard, and at the same time Richard conveyed back to the School District one-half of the minerals. Later a correction deed was executed which made it plain that the School District conveyed to Richard the surface rights and one-half of the minerals and reserved to itself one-half of the minerals. Thereafter, the Water District conveyed to Richard the 17.75-acre tract, and in this deed recited that it was retaining one-half of the mineral interest. Richard then conveyed the surface rights and one-half of the minerals to appellants, and they in turn leased this interest to Delhi-Taylor Oil

Corporation and Mayfair Minerals, Inc. Appellants thereafter purchased directly from McAllen Independent School District a one-half mineral interest in the 17.-75-acre tract and received a quit-claim deed thereto, the consideration being $500. Thus, appellants contend that they have a clear paper title to the entire 17.75-acre tract, which is from the Water District by Sheriff's Deed to Pope, from Pope by Constable's Deed to the School District, and from the School District to Richard the surface rights and one-half of the minerals, and this same interest from Richard by deed to appellants; and as to the other undivided one-half of the minerals, directly from the School District by quit-claim deed to appellants.

There is no contention by appellees that the two foreclosure proceedings were irregular in any respect, other than that the School District, in its foreclosure, could not legally foreclose upon and sell any interest in the 17.75-acre. tract that might have been owned at the time by the Water District. The only cloud upon appellants' title, if any, is the deed from the Water District to Richard, in which it attempted to retain one-half of the minerals, and the subject to provision about outstanding mineral interests in the deed from Emil Richard to appellants, reading as follows: "subject to all Record conveyances of Oil, Gas or other Mineral Rights affecting these lands, which are valid reservations of such Oil, Gas and other mineral rights and interests;" and some other statements found in deeds of trust executed at a later date.

Appellees' contention, based upon the above two deeds, is, (1) that the mineral reservation in the deed from appellee Water District to Emil Richard gave title to it of one-half of the mineral interest in the 17.75-acre tract; (2) that the "subject to" recital in the deed from Richard to appellants created an estoppel of appellants, and constituted a ratification by them of the title claimed by the Water District to an undivided one-half interest in the minerals in dispute; (3) that a further estoppel

against appellants is created by the fact that appellants leased to Delhi-Taylor Oil Corporation one-half of their mineral interest and signed a division order claiming only an 8.80 acres interest in the tract.

■ Let us first consider the effect of the deed from the Water District to Emil Richard. If the Water District clearly had nothing to sell to Richard, it can hardly contend that Richard got nothing and it got title to one-half of the minerals out of the transaction, and especially is this true in the light of its warranty to Richard of one-half of the minerals. Paul v. Houston Oil Co., Tex.Civ.App., 211 S.W.2d 345; Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878.

■ To show that the Water District did have an interest in the 17.75-acre tract at the time it executed the deed to Richard, the Water District contends that, under the doctrine of after-acquired title, when W. E. Pope purchased the tract under foreclosure proceedings by it, he did so for its benefit. We do not agree. The Water District, having been a party to the tax suit and having procured the judgment of foreclosure, and having caused the 17.75-acre tract to be sold to W. E. Pope at public sale, is estopped to claim title thereto which it acquired by deed after the suit was filed but before the public sale was had. The Sheriff's Deed is binding upon all parties to the suit. Art. 7330 and Art. 7682, Vernon's Ann.Civ.Stats.; 85 C.J.S. Taxation § 905, p. 321 and § 907, p. 328; 50 C.J.S. Judgments § 752, p. 261; Henry v. Thomas, Tex.Civ.App., 74 S.W. 599; Holt v. Holt, Tex.Civ.App., 59 S.W.2d 324. It is inconceivable that a water district, being plaintiff in a tax suit, could cause a tract of land to be sold at public sale and then say to the purchaser, you bought nothing because the district has acquired the title to the land after the suit was filed and before the time of the sale.

When W. E. Pope became the purchaser at the public sale he took a fee simple title,

under the facts herein, as against the Water District, and the doctrine of after-acquired title would not apply. Thus, at the time the Water District conveyed one-half of the minerals to Richard, so far as this record shows, it owned no interest in the tract which it could convey to Richard, and Richard got nothing out of the transaction, but, according to appellees' contention, lost the half of the minerals which he did unquestionably own. Neither appellants nor Richard have ever attempted to use this deed in their chain of title. This deed was plead by appellees, not by appellants. For many reasons, the holdings in Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626, and Adams v. Duncan, 147 Tex. 332, 215 S.W.2d 599, cited and relied upon by appellees, do not apply under the facts and circumstances here.

■ Furthermore, the Water District, having warranted the title to one-half of the minerals, even though it be by special warranty (Williston on Contracts (Rev. Ed. 1937) § 1401; Paul v. Houston Oil Co., Tex.Civ.App., 211 S.W.2d 345), Richard under his deed from the Water District must receive one-half of such minerals before the Water District can receive anything out of the transaction. Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878; Benge v. Scharbauer, 152 Tex. 447, 259 S.W.2d 166; McMahon v. Christmann, Tex., 303 S.W.2d 341; American Republics Corp. v. Houston Oil Co., 5 Cir., 173 F.2d 728.

We cannot agree that by this transaction Richard lost the one-half of the minerals he purchased from the School District and the Water District gained that one-half interest.

■ This brings us to a consideration of the effect of the "subject to" clause contained in the deed from Richard to appellants which is quoted above. This clause is too vague, indefinite and general to bind appellants under the rules of ratification or estoppel. This provision either means that the conveyance to appellants is only subject to "valid reservations" of minerals, or its meaning is ambiguous. As we have heretofore shown, the deed from the Water District to Richard was not a valid reservation on the part of the Water District of one-half of the minerals, and if the clause means something else it is too ambiguous to create a ratification or an estoppel. Linney v. Wood, 66 Tex. 22, 17 S.W. 244; Kuykendall v. Spiller, Tex.Civ.App., 299 S.W. 522.

■ Appellees further contend that by the leasing of only an undivided one-half of the mineral estate and the signing of a division order covering only such interest, appellants are estopped to assert any title to the one-half interest to the minerals in question. This being a summary judgment granted on motion of appellees, we must presume, in favor of appellants, that they had some good reason for leasing but one-half of the minerals, and, of course, having leased only a one-half interest, they naturally signed a division order calling for only an 8.80-acre interest in the royalty. It may be true that leasing only one-half of the minerals when one owns the entire mineral interest may be unusual, but certainly that does not destroy the lessor's title to the half of the minerals not leased.

■ This being a summary judgment, the opposite party is entitled to the benefit of every reasonable inference which can properly be drawn in his favor. Womack v. Allstate Ins. Co., Tex., 296 S.W.2d 233; Gulbenkian v. Penn, 151 Tex. 412, 252 S. W.2d 929; Richardson v. Iley, Tex.Civ. App., 299 S.W.2d 187; Cowden v. Bell, Tex.Sup., 300 S.W.2d 286. When reasonable inferences are here indulged in favor of appellants, we can come to no other conclusion than that the trial court erred in granting a summary judgment in favor of appellees.

The judgment of the trial court is reversed and the cause remanded.