Armer EARWOOD, et al., Appellants,

v.

Neville G. SMART, Jr., et al., Appellees.

No. 04–00–00867–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 9, 2002.

Opinion on Overruling of Rehearing
Aug. 14, 2002.

Rehearing Overruled March 14, 2003.

J. Ken Nunley, Joe M. Davis, Kelly Put-
ney Rogers, Nunley, Davis, Jolley & Hill,

L.L.P., Boerne, John C. Chambers, William B. Burford, Hinkle, Hensley, Shanor & Martin, Midland, Mark Adams Brown, San Angelo, Kurt M. Hanson, Hanson, Lamberth & Kiatta, L.L.P., Houston, for appellants.

Andrew Harper Estes, Steven C. Kiser, Lynch Chappell & Alsup, P.C., Barry N. Beck, Cotton, Bledsoe, Tighe & Dawson, Midland, Lisa Bagley Brown, The Charles Brown Law Firm, Stephen K. Carroll, I. Clay Rogers, Fulbright & Jaworski, L.L.P., Houston, Mike Willatt, William P. Flickinger, Willatt & Flickinger, Amy Lee Dashiell, Elizabeth N. Miller, Scott, Douglass & McConnico, L.L.P., Austin, Kevin M. Beiter, Cauthorn, Hale, Hornberger, Fuller, Sheehan, Becker & Beiter, San Antonio, Ashley E. Quinn, Richard L. Edmonson, EEX Corporation, Houston, for appellants

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice,[1] and PAUL W. GREEN, Justice.

Opinion by PHIL HARDBERGER, Chief Justice.

The cause underlying this appeal involves a dispute over whether a conflict exists between two land patents issued by the State of Texas. The appellants contend that the trial court erred in granting summary judgment in favor of the appellees on the defenses of limitations and estoppel by deed. The appellants further contend that the trial court erred in denying their motion for summary judgment because no vacancy existed between two surveys. The appellees assert a cross-issue contending that the summary judgment could also be affirmed on the defense of adverse possession. Because we conclude that the trial court properly granted summary judgment based on estoppel by

deed, we do not reach the other issues asserted by the parties. *See* TEX.R.APP. P. 47.1 (opinion should only address issues necessary to final disposition of appeal).

### BACKGROUND

In 1880, Surveys 15 and 16 were located and filed in Edwards County, Texas. A land patent was issued for the Survey 15 land in 1881. In 1901, a patent application was filed for the Survey 16 land. In 1902, G.C. Earwood ("Earwood") acquired equitable title to the Survey 16 land from the owner of Survey 16. In 1911, the appellees' predecessor in title, R.C. Walker ("Walker"), commissioned a resurvey of the area (the "Walker Survey") and asserted that a vacancy existed between Surveys 15 and 16 and the surveys immediately to the east (the "Walker Property").

In 1911, Earwood purchased the surface rights to the Walker Property from Walker. A deed was recorded to reflect this purchase. In 1926, Earwood sold a portion of the Walker Property's surface rights to Walter F. Whitehead, and the deed contained a reservation reflecting Walker's ownership of the mineral rights. After this sale, the General Land Office issued Walker a patent for the Walker Property. In 1927, Earwood acquired the Survey 15 land. In 1936, a patent was issued to Earwood for the Survey 16 land. The patent was issued to Earwood as assignee of J.W. Putnam.

In 1997, gas was discovered. The appellants filed a lawsuit asserting a trespass to try title claim and requesting a judgment be rendered confirming that the appellants were the owners of the Walker Property. EEW Minerals, L.L.C., which is an appellant, intervened in the lawsuit seeking a judgment "clearing [its] title of the cloud caused by [the appellees'] adverse claims

---

1. Justice Tom Rickhoff not participating.

and quieting title to the mineral estate of the Walker Survey in [the appellants]".

The appellants filed a motion seeking summary judgment on the basis that no vacancy existed. An expert's affidavit stating that no vacancy existed was attached to the motion. The appellees responded with an expert's affidavit stating that a vacancy existed. The appellees also filed a motion seeking summary judgment based on the defenses of statute of limitations, estoppel by deed, and adverse possession. The trial court granted summary judgment in favor of appellees based on the statute of limitations and estoppel by deed defenses.

## STANDARD OF REVIEW

The party moving for summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex.1999). A defendant moving for summary judgment on an affirmative defense has the burden to conclusively establish that defense. *Id.* When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant. *Id.* We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

When competing motions for summary judgment are filed, and one is granted and the other denied, the reviewing court must review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). We are required to consider all summary judgment grounds the trial court ruled on and the movant preserved for appellate review that are necessary for final disposition of the appeal. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996).

## ESTOPPEL BY DEED

The appellants contend that the trial court also erred in granting summary judgment on the basis of the appellees' estoppel by deed defense. The appellees contend that the appellants are estopped by the recitals in the 1911 deed from Walker to Earwood, the 1926 deed from Earwood to Whitehead, and the Survey 16 patent.

With regard to the Survey 16 patent, the appellees contend that the land described in the patent recognized the Walker Property. However, the field notes from the original survey controls over the field notes in the patent for purposes of determining the actual land conveyed. *Atlantic Refining Co. v. Noel*, 443 S.W.2d 35, 38 (Tex.1968) (quoting *Morrill v. Bartlett*, 58 Tex. 644, 649 (1883)). The commissioner of the General Land Office is not authorized to change the call of the field notes from the original survey's field notes in issuing a patent, and the commissioner is not authorized to divest property rights by accepting a resurvey. *Id.* at 38–39. Accordingly, the appellants are not estopped from relying on the property rights acquired based on the original survey even if the field notes in the patent vary from the original survey's field notes.

With regard to the deeds, the appellees assert that the appellants are estopped from denying Walker's ownership interest in the Walker Property because the deeds recognized that ownership interest. The appellees rely on *Greene v. White*, 137 Tex. 361, 153 S.W.2d 575 (Tex.1941), which in turn relies on *Waco Bridge Co. v. City of Waco*, 85 Tex. 320, 20 S.W. 137 (Tex.1892).

In *Waco Bridge Co.*, the plaintiff, Waco Bridge Co., purchased the land at issue from W.B. and S.B. Trice. *See id.* at 137. Waco Bridge Co. introduced a series of

deeds and testimony into evidence in an effort to show that title to the land passed from A.J. Buchanan to the Trices, but no written instrument was executed to reflect that conveyance. *See id.* at 138–39. The defendant introduced into evidence a deed from D.C. and J.D. Giddings that the defendant claimed was the source of plaintiffs' title and which contained a reservation of three public roads. *Id.* at 137. In analyzing the two possible sources of the Trices' title to the land conveyed to Waco Bridge Co., the court noted:

> Plaintiff's only evidence of title to the entire two acres was through the deed to it from the Trices, and the Giddings deed is the only conveyance shown by the evidence to have ever been made to the Trices, or either of them. The only evidence that we find of title in the Trices from any other source was given by Buchanan. The evidence showing that he only claimed an undivided interest in one and a half acres of the land, and that he never had a deed for that, and that he made none to the Trices, but that he did convey it to another person, who is not shown to have conveyed it to Trice, falls very much short of proving title in the Trices through Buchanan, notwithstanding his testimony that he made a parol sale of his interest to one of them, and put him in possession.

*Id.* at 139.

Waco Bridge Co. did not offer the Giddings deed into evidence claiming that it was not claiming title under that deed. The court concluded:

> Under these circumstances, the mere fact that the plaintiff failed to offer the deed in evidence, and that, in order to prevent the defendant from doing so, it disclaimed holding under it, was properly held by the court not to be a sufficient reason for excluding the deed. The deed clearly reserved and dedicated a street, as was contended by the city. If the plaintiff had accepted it and held under it, or it if was a link in its chain of title, it was bound by it. Even if it is was not a necessary link in its chain of title, if it acquired the title of those holding under it for the purpose of quieting its title or removing clouds or conflicting claims, it must be held to have taken it with and become bound by its reservations.... The plaintiff, it seems to us, failed to prove a legal or equitable title to the land, either with or without the introduction of the deed, but the use proposed to be made of it by the defendant, and permitted by the court, did not depend upon its effect in establishing plaintiff's title. It was sufficient, for the purposes of this case, if it appears that it was one of the sources under which the plaintiff claimed the land.

*Id.* at 140. The court held that the Giddings deed was properly admitted as evidence, and the Trices assented to the reservation by accepting the Giddings deed. *Id.*

In *Greene v. White,* title to the oil, gas, and mineral interest of 133 acres was at issue. 137 Tex. 361, 153 S.W.2d 575 (Tex. 1941). The plaintiffs claimed title to the mineral interest by adverse possession and through a deed, but the effectiveness of the deed required the determination of a boundary dispute. *See id.* at 578. One of the theories alleged by the defendants was that the plaintiffs were estopped to deny the reservation of a mineral interest in a deed from F.M. Greene, the defendants' predecessor-in-interest, to Alex Garrett, the plaintiffs' predecessor-in-interest. *See id.* at 583. The court noted that the deed was executed in settlement of conflicting claims of the parties. *Id.* The court concluded that it was not necessary to show that Greene had good title at the time the

deed was executed in order for the reservation to be effective. *Id.* at 585. The court held that as between Greene and Garrett and those in privity with them, the reservation of minerals was binding and effective. *See id.* at 585.

This court has distinguished the holding in *Greene* in two cases.

In *Lambe v. Glasscock*, 360 S.W.2d 169, 170 (Tex.Civ.App.-San Antonio 1962, writ ref'd n.r.e.), the trustees of North Starr Petroleum Corporation brought suit contending they were entitled to be paid an overriding royalty on a lease. The lease was acquired from Amalia R. de Canales ("Canales") by George R. Boyle, who assigned the lease to North Starr. *See id.* In 1949, North Starr assigned the lease to C.G. Glasscock. *See id.* A question arose as to whether Canales had been paid a delay rental payment which was required to extend the lease. *See id.* In light of this question, Glasscock and North Starr entered into an escrow agreement giving Glasscock the right to reassign any lease for which Glasscock could not determine that a delay rental had been paid. *See id.* Glasscock never reassigned the lease to North Starr. In 1949, Glasscock assigned a one-half interest in the lease to Pontiac Refining Corporation warranting that the delay rental had been paid. *See id.* Pontiac's interest was subsequently reassigned to Glasscock. *See id.* Canales refused to acknowledge payment of the delay rental and subsequently entered into a new lease with Clark. *See id.* Clark assigned the lease to Glasscock. *See id.*

The trial court found the delay rental was not paid, causing the lease to Boyle to expire before North Starr's assignment of the lease to Glasscock. *See id.* at 171. As a result, the assignment to Glasscock was a nullity. *See id.* The appellants, as successors-in-interest to North Starr, asserted that Glasscock was estopped from as-

serting the invalidity of the Boyle lease based on the Texas Supreme Court's holding in *Greene.* *See id.* at 172. This court held:

> The general rule in Texas is that recitals in a deed are binding only when the parties thereto claim under such deed. The rule in *Greene v. White,* supra, does not apply when the parties to the deed in question never attempted to use same in their chain of title. Here the trial court found that the senior Boyle lease had expired and that therefore production was had under the junior Clark lease. We, therefore, hold that Glasscock was not estopped as a matter of law from asserting the expiration of the senior lease.

*Id.* at 172–73 (citations omitted).

As authority for its distinction of *Greene v. White,* the *Lambe* court cited *Dean v. Hidalgo County Water Improvement Dist. No. Two,* 320 S.W.2d 29 (Tex.Civ.App.-San Antonio 1959, writ ref'd n.r.e.). In *Dean,* a tract of land was owned by W.E. Pope. *See id.* at 30. The water district brought suit to foreclose a tax lien on the land. *See id.* While the suit was pending but prior to the sale, Pope conveyed the land to the water district. *See id.* The water district proceeded with the foreclosure sale, and Pope purchased the land at foreclosure. *See id.* Subsequently, a school district brought a suit to foreclose its tax lien against the property. *See id.* The school district purchased the property at foreclosure and subsequently conveyed the surface and a one-half mineral interest to Emil Richard. *See id.* The water district then conveyed Richard the land reserving a one-half interest in the minerals. *See id.* Richard conveyed the surface rights and the one-half mineral interest to the appellants. *See id.* Appellants then purchased the other one-half mineral interest from the school district. *See id.*

The appellants brought a trespass to try title suit against the water district which asserted that it owned a one-half interest in the minerals. The trial court granted summary judgment in favor of the water district. *See id.* at 30. The appellate court noted that Pope acquired fee simple title as a result of his purchase at the water district's foreclosure. *See id.* at 31–32. Accordingly, when the water district conveyed the land to Richard, the water district owned no interest in the land. *See id.* at 32.

The critical distinguishing factor between the instant case and this court's prior holdings in *Lambe* and *Dean* is the reason for the execution of the deed in question. In *Lambe* and in *Dean*, the deed in question was not executed to resolved conflicting claims to the land by the parties to the deed. In *Greene*, however, there were various possible sources of title depending on the resolution of a boundary dispute and an adverse possession claim. In *Greene*, the deed was viewed as having value as between the parties because it served as a settlement of the parties' conflicting claims. *See Greene*, 153 S.W.2d at 583; *see also Waco Bridge Co.*, 20 S.W. at 140 (noting deed effective as between the parties if acquired for purpose of removing clouds or conflicting claims).

Similarly, in this case, the 1911 deed was executed after Walker asserted that a vacancy existed thereby giving rise to a possible conflict in claims between Walker and Earwood because Earwood also claimed equitable title to a portion of the lands included in the Walker Survey. At the time the deed was executed, it had value to the parties by resolving the conflicting claims. Even if the appellants could prove that no vacancy exists so Walker did not have good title at the time the 1911 deed was executed, it is "not necessary to show that [Walker] had good title at the time

the deed was executed in order for the reservation to be effective." *Greene*, 137 Tex. 361, 153 S.W.2d at 585. As the Texas Supreme Court stated in *Waco Bridge Co.*, "Even if [the 1911 deed is] not a necessary link in [the appellants'] chain of title, if [Earwood] acquired the title of those holding under [the 1911 deed] for the purpose of quieting [Earwood's] title or removing clouds or conflicting claims, [Earwood] must be held to have taken [the 1911 deed] with and become bound by its reservations." 20 S.W. at 140. Accordingly, the appellants are estopped by the recitals in the 1911 deed to disclaim Walker's ownership.

CONCLUSION

The trial court's judgment is affirmed.

**SUPPLEMENTAL OPINION ON APPELLANTS' MOTION FOR REHEARING**

Appellants assert in their motion for rehearing that, "Even if the Court adheres to its holding that Appellants are estopped by the 1911 deed from asserting title to the minerals underlying the eastern portion of Survey 16 on the grounds that G.C. Earwood impliedly conveyed those rights to Walker in a compromise and settlement of conflicting claims, Appellants cannot be estopped from asserting superior title to the minerals underlying Survey 15 ... since someone other than Earwood held the title to Survey 15 at that time." We issue this supplemental opinion to clarify our opinion in response to this contention.

Appellants' contention is contrary to the Texas Supreme Court's holding in *Waco Bridge Co. v. City of Waco*, 85 Tex. 320, 20 S.W. 137, 140 (1892). Appellants sought to acquire the title claimed by Walker to both Survey 15 and Survey 16 for purposes of quieting title or removing clouds or conflicting claims. The appellants were not

simply seeking to acquire Walker's title to Survey 16 as evidenced by Earwood's subsequent fencing of the relocated boundaries of both Survey 15 and Survey 16. In addition, the Texas Supreme Court held that when a deed is acquired for purposes of quieting title or removing a cloud or conflicting claim, the person acquiring the deed "must be held to have taken it with and become bound by its *reservations.*" *Id.* (emphasis added). Earwood is estopped by all the reservations and recitals in the 1911 deed not just the reservations and recitals relating to Survey 16. In applying the estoppel theory, the Texas Supreme Court stated the theory is applicable if the deed in question is "one of the sources under which the plaintiff claimed the land." *Id.* When Earwood fenced the Survey 15 land and in the subsequent transaction with Whitehead, the 1911 deed was a source of title under which Earwood claimed the land. In fact, the contract between Earwood and Whitehead specifically references the 1911 deed.

*Appellants' motion for rehearing is denied.*