MONTAGUE COUNTY V. CLAY COUNTY LAND AND CATTLE COMPANY.

No. 6736.

1. **Surveys Actually Made Upon Ground.**—See facts and discussion where an actual survey evidenced by a marked line was held to control a call for course and distance.

2. **Surveyor's Calls.**—It will not be presumed in absence of evidence that a surveyor was ignorant of lines called for which can be identified. Nor will it be presumed that the surveyor intended to make his lines conflict with each other.

3. **Office Survey.**—See discussion of facts showing an office survey made upon assumed data shown to be erroneous.

APPEAL from Clay. Tried below before Hon. P. M. Stine.
The opinion gives a statement.

*Stevens & Herbert*, for appellant.—1. The lines of a survey actually marked on the ground, if they can be found and traced, will control calls for course and distance, and a subsequent survey calling for such older grant will stop at such marked lines and be governed by them. Schaeffer v. Berry, 62 Texas, 705; Bolton v. Lann, 16 Texas, 96.

2. A resurvey of a tract of land and the procurance and acceptance of a patent thereunder is an abandonment of an original location. A resurvey can be made to avoid conflicts in locations, and the party having such resurvey made will be estopped from afterward claiming the part of their survey so abandoned. Pasch. Dig., art. 4574.

3. In the absence of direct testimony it will be presumed that a surveyor in making a survey actually found the lines, corners, and objects called for in his field notes, and that such calls are correct. Stafford v. King, 30 Texas, 257; Herbert v. Bartlett, 9 Texas, 97.

4. A call for a line or corner of an adjoining survey called for by mistake in field notes may be entirely disregarded in determining the location of the survey when other calls in conflict therewith are found to be more material and certain. The corner of an adjoining survey called for as a beginning corner does not necessarily determine the locality of the last survey. A beginning corner of the survey is of no higher dignity than any other corner of the survey, and if such a corner is called for by mistake it may be located elsewhere by course and distance from other known corners found on the survey. Boon v. Hunter, 62 Texas, 582; Jones v. Andrews, 62 Texas, 652; Freeman v. Gerald, 2 Law Jour., 744; Booth v. Strippleman, 26 Texas, 436; Gerald v. Freeman, 68 Texas, 201; Ayers v. Harris, 64 Texas, 296; Fordtran v. Ellis, 58 Texas, 245; Philips v. Ayers, 45 Texas, 602.

*Hazelwood & Templeton*, for appellee.—A call for course and distance will prevail over a call for the line or corner of another survey, where, from all the calls in the grant and from all the surrounding and connective circumstances adduced in evidence to explain the discrepancy, it

appears that the course and distance are the most reliable and certain evidence of the true location of the grant. Robinson v. Doss, 53 Texas, 496–506; Boon v. Hunter, 62 Texas, 582; Jones v. Andrews, 62 Texas, 652; Jones v. Powers, 65 Texas, 207, 214; Booth v. Strippleman, 26 Texas, 436; Schaeffer v. Berry, 62 Texas, 705; Anderson v. Stamps, 19 Texas, 460; Davidson v. Killen, 68 Texas, 406; Moore v. Reiley, 68 Texas, 668.

HOBBY, PRESIDING JUDGE.—The north boundary line of the Angelina County four league school land survey and south boundary line of a similar survey made for Montague County is a common line, and coincide for a distance of eight thousand seven hundred and thirty-seven varas.

The plaintiff claims that the land in controversy is a part of and embraced within the limits of the Montague school land survey, lying adjacent to and bordering on the south boundary line of said survey and constituting the south end of the same.

The contention of the defendant is that it is included within the survey in the school land patented to Angelina County, and that it is situated along and contiguous to the north boundary line thereof.

The accompanying sketch represents the land in litigation, and the position of the surveys mentioned with reference to each other and their relation to surrounding surveys. The dotted line on the sketch running from *a* to *b* indicates the line as claimed by the appellee and which was established by the court's decree. The line south of the above and running parallel with it from *c* to *d* is that claimed by appellant.

From the foregoing statement it will be seen, and it was so agreed in the court below between the parties, that "the real question of issue in this case is the true location of the dividing line referred to between said surveys."

The plaintiff's (Montague County) contention is that the north boundary line of the Angelina County school land survey is a prolongation of the Parker County school land survey from the southeast corner of the same to the northwest corner of the Bryan survey. The theory of the defendant the Clay County Land and Cattle Company is that this line runs from the most western southwest corner of the Wagoner survey due west, intersecting the east boundary line of the Parker school land survey at a point 1084 varas north of the southeast corner of said Parker survey.

The cause was tried by the court without the intervention of a jury, and the court found, as stated, that the south line of the Montague County school land survey begins at the most westerly southwest corner of the Wagoner one league survey, 1084 varas north of the Bryan 320-acre survey, and on the north boundary line of the Angelina County school land survey, and runs thence west with said north boundary line of the Angelina survey to the east boundary line of the Parker County school land survey. The judgment of the court so established the disputed line; from which Montague County prosecutes this appeal.

It will not be necessary, we think, to discuss the assignments based upon the alleged refusal of the court to make specific findings of facts, as requested by appellant, as the view we take of the case renders unimportant their consideration. Nor do the remaining assignments require to be treated in detail. They properly raise in different forms the question of the legal sufficiency of the court's findings, as well as the correctness of its judgment.

A reference to the field notes of each of the surveys mentioned is absolutely essential to a proper understanding of the question at issue between the parties. The field notes contained in the Angelina County school land patent, dated in July, 1877, describe that survey as follows: Beginning at the northeast corner of a survey for C. Bryan; thence west 1900 varas to the northwest corner of the Bryan; thence south with west boundary line of the Bryan to the southwest corner on north boundary line of the Humphries survey; thence west on his north boundary line to his northwest corner; thence south on his west boundary line to his southwest corner on northeast corner of Buffalo Bayou, Brazos & Colorado

Railway survey; thence west with north boundary line of that survey to its northwest corner; thence south to its southwest corner on north boundary line of the Hall survey; thence west to his northwest corner; thence south with his west boundary line to the northeast corner of the Landart survey; thence west with Landart's north boundary line to his northwest corner; thence south with his west boundary line to northeast corner of the Weeks survey; thence west with the north boundary line of the Weeks to its northwest corner; thence south 311 varas to a stone for corner; thence west 2688 varas; thence north 10,017 varas to a stake in south boundary line of the Parker County school land survey; thence east passing southeast corner of said Parker survey and southwest corner of the Montague survey of school land 15,500 varas to a corner in the prairie; thence south 1064 varas to beginning corner.

The original field notes of the Angelina school land survey in evidence, dated in March, 1858, appear to be substantially the same as the corrected field notes of 1876, on which the patent issued in July, 1877, with the following difference, which in a great measure is the foundation of this controversy: From the southwest corner of the Angelina school land survey, field notes of 1858, call on the west line of said survey to run north 10,999 varas to a mound in the prairie; thence east 18,130 varas to the beginning. The corresponding call in the patent it will be observed runs north 10,017 varas to a stake in the south boundary line of the Parker County school land survey; thence east passing southeast corner of same and southwest corner of the Montague County school land 15,509 varas to a corner in the prairie; thence south 1064 varas to the beginning. This survey is not shown to have been made on the ground.

The field notes of the Parker County school land survey made in October, 1860, on which the patent was issued, are as follows: Beginning at the northwest corner of the Angelina school land survey at a stone marked P. C. S. L. Octo. 29th, 1860, etc.; thence east 1440 varas a branch, 1200 same branch, 2380 varas to Turkey Creek, 5632 varas stone for corner; thence north 10,000 varas to post and pile stone corner; thence west 530 varas a branch, 10,000 varas corner, mound giving bearings; thence south 4860 varas Turkey Creek, 10,000 varas corner; thence east to beginning.

The field notes of the Montague County school land survey, dated in February, 1861, on which the patent issued, describes the land as follows: Beginning on the north line of a survey for Angelina County 789 varas west from its northeast corner and the southwest corner of the Wagoner survey; thence north with Wagoner's line 2240 varas to another of his corners and south line of Stringer's survey; thence west 1141 varas to Stringer's southwest corner; thence north with Stringer's west line 5322 varas to his northwest corner; thence east 871 varas to pile stone on Stringer's north line; thence north 1898 varas to corner

on bank Red River; thence up the river with its meanders north 70 west 1811 varas, north 34 west 3000 varas, north 21 west 1140 varas, corner on bank Red River; thence west 4638 varas to corner in prairie; thence south 3685 varas pass northeast corner of Parker County school land, 3685 varas to southeast corner of same on north line of Angelina County school land, a corner stone marked X giving bearings, etc.; thence east with said line 8737 varas to beginning.

We will not reproduce the remaining testimony in the order in which it appears in the record before us, but shall refer to such portions of it as may be necessary, in connection with the foregoing field notes and sketch, to an intelligible explanation of the question involved.

The evidence in the case clearly establishes the fact that the Parker County school land survey was made on the ground and its south line established by the call for a stone at the beginning corner of said survey, marked P. C. S. L. Octo. 29th, 1860, and further identified by the call for two branches and a creek in running east to the southeast corner of said Parker survey, which is also the southwest corner of the Montague school land survey. From this latter point this line is prolonged due east 8737 varas and forms the Montague south line. This well established south line of the Parker is called for in the field notes of the Angelina patent in running its west boundary line at 10,017 varas from the northwest corner of the Plemmons survey or southwest corner of the Angelina. This west boundary line of the Angelina survey is shown by the evidence to be only 9166 varas from its southwest corner to the Parker south line.

Under this state of the proof with reference to this branch of the case the court held that the call for the Parker County school land south line in the Angelina patent was a mistake, and that the west boundary line of the latter survey, running north from the Plemmons northwest or its own southwest corner, would not stop at the south line of the Parker—that is, 9166 varas therefrom—but would reach a point 851 varas north of said Parker south line, which would be 10,017 varas from the southwest corner of the Angelina school land survey, or Plemmons northwest corner.

We believe that the court erred in so finding. The effect of it is to locate the northwest corner of the Angelina school land by the call for distance 10,017 varas, and give to such call greater dignity than the call for a well established line of an adjoining survey. Hence it would be violative of the familiar rule that the line of a survey actually marked on the ground, when found and identified, should control a call for distance and course.

The Angelina patent describes a junior survey and calls for an older adjoining grant, the south line of the Parker. Evidently if this call be found and identified on the ground by natural objects, as for ex-

·ample a creek and branches, which are not shown to have been called for by mistake, it would be superior to a call for a point north of that line at a distance of 10,017 varas.   If the call in the old field notes of the Angelina County school land is intended by the court to be the controlling call on the west boundary line of said survey, it would reach a point still further north of the Parker south line than found by the court, as that call was for 10,999 varas from the southwest corner of the Angelina, instead of 10,017 in the patent.   This would locate the north line of the Angelina at 1833 varas north of the Parker south line, instead of 851 as found.

The finding of the court upon this branch of the case results in a conflict between the Angelina and the Parker surveys of school land.   We are not able to see that the evidence would authorize or lead to this, but on the contrary the proof is inconsistent with this conclusion.

The Angelina, Parker, and Montague surveys of school land were made by the same surveyor, Sam Green, who was the county surveyor of Clay County.   The Angelina County school land survey is not shown to have been made on the ground.   But this officer it is proved did make an actual survey of the Parker school land.

The evidence showed that the original field notes of the Angelina school land, dated in March, 1858, were filed in the office of the surveyor of Cooke Land District in April, 1858.   They were filed in the General Land Office, in May, 1875, and are indorsed by the Commissioner of the General Land Office as canceled by the return of the corrected field notes before mentioned, dated in 1876.   The Parker school land survey, we have seen, was made in 1860 and its south line established on the ground.   The Montague school land survey followed in 1861.

The conclusion of the court from these facts was that when the Montague school land survey was made in 1861 the official maps of Clay County located the Parker County school land survey boundary line as running due west from the most westerly southwest corner of the Wagoner, coincident with the Angelina north boundary line, and that it was supposed that the Parker· south line coincided with the north boundary line of the old field notes of the Angelina, and that it was not then known that Parker County had established its south boundary line on the ground 851 varas further south, and that the surveyor in calling for that line of the Parker called for it under a mistake as to its locality.

The facts we do not think warrant this finding, which in effect reverses the rule presuming, in the absence of proof otherwise, that the officer knew how to perform and did discharge properly his duties. This conclusion of the court would seem to involve the presumption of ignorance on the part of the surveyor in not knowing a well established

line actually run by him when he called for it in a subsequent survey, or that if he did he crossed it knowingly and established the north line of the Angelina north of it 851 varas. This would demonstrate that he intended a conflict between these surveys. But there being no evidence that the surveyor was mistaken in calling for this south line of the Parker, we do not think a conclusion should be reached which must be founded upon a presumption that a conflict was intended.

There can be no doubt, from the record before us, that the beginning corner of the Parker and its south line is well established on the ground. It is obvious also, we think, that this south line up to the southeast corner of the Parker coincides with the north boundary line of the Angelina school land.

It follows from this that from the southeast corner of the Parker, which is the southwest corner of the Montague, this line prolonged due east for 8737 varas forms the north boundary of the Angelina school land and south boundary line of the Montague school land up to the northwest corner of the Bryan, which is substantially the line contended for by appellant Montague County.

We conclude, therefore, for the reasons given with reference to this branch of the case, that the court erred in holding in effect that the call for distance in the Angelina patent from the northwest corner of the Plemmons survey was superior to the call for the south line of the Parker, found and identified by its calls for natural and artificial objects; and that the court erred in finding that the north line of the Angelina was 851 varas north of the said Parker south line.

Several assignments of error properly raise the question of the correctness of the court's finding that the beginning corner of the Montague school land survey is at the most westerly southwest corner of the Wagoner survey, and complain of the judgment rendered pursuant to such finding, which establishes appellant's south line as beginning at such corner of the Wagoner 1084 varas north of the north line of the Bryan survey, on the north boundary line of the Angelina school land survey; thence with said north boundary line due west to the east boundary line of the Parker.

This call, it will be observed, for the Wagoner corner is on the east line of the Montague school land. It evidently, we think, influenced in a great degree, if it did not entirely shape and control, the judgment establishing the disputed line. The east line of the Montague was not actually located on the ground. The evidence shows that the surveyor located it by the Wagoner and Stringer adjoining surveys on the east, upon the supposition that the official map of Clay County then in use represented these surveys correctly and as they existed in fact on the ground. Guided by this map, an office survey of the east line of the Montague was made by the surveyor, in which he called for

the Wagoner survey 1056 varas nearer Red River than it was actually located on the ground. This map was shown to be incorrect, and the call for the Wagoner 1056 varas north of its real position on the ground was shown to be a mistake. This is plainly disclosed by the testimony of the surveyor Patterson, who stated that the call for Red River on the east line of the appellant's survey was 1056 varas short; that the Stringer and Wagoner surveys were 1056 varas nearer Red River than the map indicated, and that the beginning corner, as called for in the appellant's survey in the map, is located 1056 varas nearer its northeast corner on the river than its field notes called for. The map placing, as thus explained, the Stringer and Wagoner surveys 1056 varas further south from Red River than they were in fact, it follows that the surveyor in calling for the most westerly southwest corner of the Wagoner was clearly mistaken in the call he made for the same, and that it should for that reason be disregarded. But it seems that the court gave controlling importance to this call for an adjoining survey, the most westerly southwest corner of the Wagoner as a beginning point from which the south line of the Montague school land survey should be run, when it was shown to have been called for by the surveyor under the circumstances above mentioned. If there had been no mistake in calling for the Wagoner corner, as above explained, we are not prepared to say that other calls of the Montague or Angelina school land surveys may not have been as material and of equal dignity, if they were found and identified on the ground, in ascertaining the true location of the disputed line. But where an adjoining survey is called for, as is the most westerly southwest corner of the Wagoner in this case, and it is shown to have been called for by mistake, it should not be considered, and other calls must be resorted to to establish the controverted line. The Wagoner corner may have been, as was found by the court, a well established corner by course and distance from other surveys or its own corners, but this does not affect the question of its unreliability as affording data for the location of the line when it is, as was shown, called for by mistake. Had there been no such mistake in calling for it, we think the line as contended for by appellant is established by the call on the west boundary line of the Angelina school land survey, as we have endeavored to show. And when we consider what has been said with reference to that branch of the case, in connection with the proof as to the mistake made in the call for the Wagoner northwest corner, we think it adds much force to the conclusion we have reached that the court erred under the facts in establishing the appellant's south line as it did by its judgment.

The judgment of the court, as stated, locates the Montague south line at a point on the east boundary line of the Parker school land survey 1084 varas north of its southeast corner, but it found that the Angelina

north line was located at 851 varas north of said Parker south line, the effect of which is to give appellee more land by its judgment than its findings authorized.

For the reasons given we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*.

Adopted February 24, 1891.

J. A. *Templeton* argued a motion for rehearing. Motion refused.