## TOWN OF JACKSONVILLE v. PINKARD.

### No. 3969.

Court of Civil Appeals of Texas. Texarkana.

May 14, 1931.

Rehearing Denied May 28, 1931.

Guinn & Devereux, of Jacksonville, and Guinn & Guinn, of Rusk, for appellant.

W. T. Norman, of Rusk, Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellee.

SELLERS, J.

The plaintiff, W. T. Pinkard, brought suit in the district court of Cherokee county, Tex., against the town of Jacksonville, T. E. Acker, A. E. Garner, and C. W. Marshall for the title and possession of lots 21 and 22 in block 138 in the town of Jacksonville, without describing the lots by metes and bounds; also praying for a temporary writ of injunction restraining the defendants from interfering with his property situated on said lots; and also praying for $300 actual damages and $5,000 exemplary damages.

The defendant the town of Jacksonville answered by (a) general demurrer, (b) plea of not guilty, (c) general denial, (d) disclaimer as to any right, title, or interest in lots 21 and 22 in block 138 in the town of Jacksonville, Tex., as shown by M. L. Earle's 1914 map. Defendant also filed cross-action against plaintiff for the title and possession of a strip of land 17 inches wide and 115 feet in length, and being a part of lot 20 in block 138, as shown by M. L. Earle's 1914 map of the town of Jacksonville. The defendants T. E. Acker and A. E. Garner filed their answer, disclaiming any right, title, or interest in and to the property described by the plaintiff's petition. The defendant C. E. Marshall filed his answer, stating that he had no claim or title to the property described in the plaintiff's petition, that he was merely a contractor employed by the town of Jacksonville to erect a building on lots 18, 19, and 20, in block 138, and that he was acting under instructions of

said town given to him by its officers and agents.

The court submitted the case to the jury upon special issues upon answers to which he rendered judgment for plaintiff against defendant town of Jacksonville for $20 actual damages and $500 exemplary damages, and for the title and possession of the lots 21 and 22 in block 138 specifically establishing the southwest corner of said lots at a point 100 feet northerly from the southwest corner of said block 138, which said beginning point was also described as being the southwest corner of the south wall of a building owned by plaintiff; also perpetuating the injunction theretofore issued permanently restraining the town of Jacksonville from interfering with the plaintiff in his enjoyment of the possession of the said property. Judgment was also rendered in favor of the defendants T. E. Acker, A. E. Garner, and C. W. Marshall upon their disclaimer.

W. T. Pinkard owned lots 17 to 22, inclusive, in block 138 in the town of Jacksonville. All of said lots joined and paralleled each other and face the west on what is known as Ragsdale street, which street runs north and south. Lot 17 is bounded on the south by Rusk street, which runs east and west. In other words, the lots in controversy lie in the northeast corner of the intersection of Rusk and Ragsdale streets, and are bounded on the north and east by 20-foot alleys. Each of the lots is 25 feet wide and 115 feet long. Pinkard constructed a building on lots 21 and 22. Said building was constructed so as to cover these two lots, being 50 by 115 feet. Some time after the construction of the building, Pinkard sold the remaining lots 17, 18, 19, and 20, which lie between the south wall of his building and the north line of Rusk street, to the city of Jacksonville, said lots being described in the deed of conveyance as follows: "All of Lots 17, 18, 19 and 20 in Block 138 in the City of Jacksonville, Texas, as shown by M. L. Earle's 1914 map of said town; said lots having a front footage of 100 feet on South Ragsdale Street and 115 feet on East Rusk Street."

The city purchased the lots for a location for a city hall and fire station, and, when they began the construction of the city hall, they undertook to tie onto the south wall of appellee's building, and for that purpose dug several small holes into, and also excavated to some extent under, the south wall of said building. This action of appropriating the south wall of appellee's building, as explained by the city, was to secure its 100 feet which their deed from the appellee called for. It was the express intention of the city to use the south wall of appellee's building as the north wall of the city hall and fire station up as far as it extended, and then to construct the wall of the second story of the city hall and fire station upon the south wall of appel-

lee's building. The real issue in this case was to determine whether there was 100 feet of land between the south wall of appellee's building and the north line of Rusk street.

It was agreed upon the trial that the parties claimed under a common source of title, and that it was not necessary for either party to prove title except as between each other.

The court submitted the following issue to the jury: "Do you find from a preponderance of the evidence that there is south of and between the south wall of W. T. Pinkard's building and the north line of Rusk Street 100 feet of land?" To this the jury answered "Yes."

The evidence offered upon this issue was conflicting, and was quite voluminous, so much so that we will not undertake to set out any portion of same, but think it sufficient to say that we have carefully considered the evidence and have concluded that the same is sufficient to support the finding of the jury.

One of appellant's assignments of error complains of the court's refusal to admit in evidence a map known as the M. L. Earle's map of 1914. It will be remembered that the description of the lots in controversy as described in the deed from Pinkard to the city of Jacksonville referred to the M. L. Earle map of 1914, but no reference was made to which of the M. L. Earle maps it referred. M. L. Earle, the maker of the map, testified in the case, and explained that he had a great number of these maps printed from his original draft, and as printed they contained many mistakes, one of which was that the map as printed showed an alley adjoining the lots in controversy on the north to be 25 feet, when in fact it was only 20 feet. The map offered in evidence was one which had been corrected by M. L. Earle and sold to the commissioners' court of Cherokee county and caused to be recorded in the deed records of the county. But, without going into an extended discussion of the question, we are of the opinion that, if the court erred in refusing to admit this map in evidence, it was not such error as would require a reversal of the case, since M. L. Earle, the maker of the map, was permitted to testify in detail as to all matters and information material to the issues in the case which were contained in the map. And, further, there were other maps introduced which coincided exactly with the M. L. Earle map offered in evidence on the issues involved.

It is further insisted by the appellant that appellee is not entitled to recover against it for the actual damages done to his property by the city of Jacksonville which the jury assessed at $20. We think this question has been so well settled adversely to appellant's contention that another discussion would be

useless. City of Amarillo v. Tutor (Tex. Com. App.) 267 S. W. 697.

█ Appellant assigns as error the action of the trial court in allowing a recovery against it of exemplary damages as assessed by the jury in the sum of $500. As we understand the record in this case, it presents nothing more or less than an ordinary boundary suit between a municipal corporation and an individual in which the evidence would have supported a finding of the jury in favor of either party, and, while it has been established by the jury that the officials of the city of Jacksonville had no right to go upon and undertake to appropriate a part of the appellee's building, and in doing so they were guilty of a trespass for which the city became liable for the actual damages done, and while it may be said that the record is sufficient to authorize the conclusion that the conduct of the city officials was such that necessitated and required the appellee to employ lawyers, and which, vexed and worried the appellee considerably, yet such a state of circumstances as shown by the evidence will not warrant the recovery of exemplary damages against a municipal corporation in Texas. The authorities in other jurisdictions may differ on this question, but we regard it as settled in Texas by the case of Ostrom v. City of San Antonio, 33 Tex. Civ. App. 683, 77 S. W. 829.

There are other assignments of error we have not discussed, but we deem them without merit, and they are overruled.

Judgment of the trial court will be reformed so as to allow the appellee to recover damages in the sum of $20, and in all other respects the judgment will be affirmed and the cost of this appeal taxed against the appellee.