Salome WOFFORD et vir, Appellants,

v.

Agnes F. MILLER, Appellee.

No. 23.

Court of Civil Appeals of Texas.

Corpus Christi.

July 29, 1964.

Rehearing Denied Sept. 10, 1964.

Robert Seerden, Victoria, for appellants.

Denver E. Perkins, Gonzales, for appellee.

NYE, Justice.

This is a boundary suit. Agnes F. Miller, a feme sole, brought this suit in the district court of Lavaca County, Texas, to establish the boundary between certain lands owned by her and certain lands owned by Salome Wofford, as well as to partition various other lands. In the partition suit Agnes F. Miller was joined by E. T. Newhaus as plaintiffs seeking partition of the lands owned by Salome Wofford and her husband, W. D. Wofford, and also Henry Kallina and L. Y. Feinstein who were named defendants in the suit. By cross-action Salome Wofford and her husband, W. D. Wofford, sued in trespass to try title claiming ownership of approximately 11.33 acres of land, being a narrow strip of land severing the property of the Wofford and the Miller tract.

The trial on the boundary dispute was to a jury for a determination of the boundary between the J. W. Harvey survey owned by the Woffords and the J. W. Rogers survey owned by Miller.

On the verdict of the jury favorable to the plaintiff Miller on all issues submitted, judgment was rendered by the court in her favor and against the defendant Wofford. Salome Wofford is hereinafter referred to as appellant and Agnes F. Miller as appellee.

To properly understand the issues complained of, it is deemed advisable to incorporate in this Opinion a rough draft taken

substantially from "Plaintiff's Exhibit No. 23" which was referred to in the special issues and the court's Exhibit "A" attached to its judgment. No particular effort has

-2-

been made on our part to adhere strictly to scale, but it gives a fairly accurate picture of the layout of the land. The narrow shaded strip just east of the J. W. Harvey Survey, separating the Harvey Survey from the W. F. Rogers Survey, is the tract of land in controversy.

The first and senior survey upon which all the properties are based is the M. Townsend one-third League, the South line of which is shown at the top of the sketch. The disputed properties are bounded on the south by the W. K. Estill survey which is the second senior survey to all of the properties under consideration. The North line of the Estill Survey is shown at the bottom of the sketch. The third senior survey was the F. W. Miller Survey shown at the northwest corner of the sketch. The next survey in point of time was the J. W. Harvey Survey which is the survey owned by the appellant Salome Wofford. The major point of dispute in the law suit is the East line of the J. W. Harvey Survey and the West line of the W. F. Rogers Survey where it connects with the J. W. Harvey. The appellee Agnes F. Miller is the present owner of the Rogers Survey.

It is the appellant's contention that the J. W. Harvey Survey extends in an easterly direction to a line designated on the attached plat as "GH", whereas, the appellee

Agnes F. Miller contends and the jury found that the East boundary of the J. W. Harvey Survey is the line "AB". The appellant filed motions for instructed verdict at the close of appellee's case, motion for directed verdict at the close of the evidence, and filed motions for new trial after the judgment was entered, setting forth in such motions: That all of the credible evidence and the preponderance of the evidence showed that the true boundary was as contended by the appellant at the line "GH"; that the verdict of the jury was contrary thereto; and that there was no evidence or in the alternative insufficient evidence to establish the true boundary at the line "AB". The points of appeal listed above relate to appellant's assignments one through four and will be discussed together inasmuch as they relate to sufficiency of evidence.

■ Upon an assignment of insufficient evidence and that the verdict is so against the great weight and preponderance of the evidence we are compelled to weigh and consider all of the evidence in the case. Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126 (1959); 30 T.L.R. 803.

Substantially, all of the surveys shown on the sketch were made by the County Surveyor of Lavaca County by the name of H. H. Russell in the late 1800's and the early 1900's. In 1886 Russell surveyed the property known as the "J. W. Harvey" and placed the East line of the Harvey at the place shown on the sketch as being line "GH". However, Russell made a mistake and located the point "H" too far South, into and in conflict with the W. K. Estill tract which was a senior survey to the Harvey. The surveyor called this original survey of the Harvey as containing 160 acres.

Appellant relies heavily on the testimony of Duward Gail Ford, a registered public surveyor who made two surveys of the property in question—one a "patent survey" and the other a "boundary survey". Ford testified in effect that the original Harvey survey commenced at the Southwest corner of the F. W. Miller tract, proceeded East 1000 varas to the Southeast corner of said Miller tract, and continued on at 1465 varas, a stake for a corner, "from which a P.O. 20′ (sic) in dia. m'ked x, brs. N 14 W. 7 varas." Next, Ford testified concerning the J. H. Parker original survey. This is the Varnell tract and the North part of the Rogers tract and which was surveyed by Russell in 1895. This survey began as follows: Beginning at the Northwest corner of the Wadham Survey, proceed westerly to the Northeast corner of the F. W. Miller Survey, thence South to the Southeast corner of the said Miller Survey, "thence 465 varas to the Northeast corner of the survey for John Harvey", and so on back to place of beginning. (Emphasis supplied). This survey recognizes and corresponds with the original Harvey Survey at the point "G" extending 465 varas from the Southeast corner of the F. W. Miller Survey. However, in 1902, the original Parker Survey was cancelled and re-surveyed for Varnell and a patent was issued to Varnell which calls for a survey beginning at the Northeast corner of the F. W. Miller Survey, proceeding south to the Southeast corner of said survey, then East 480½ varas to a stake, for the Southeast corner of this survey, thence North to the M. Townsend Survey for the Northeast corner of this survey, then West along the Townsend Survey to the place of beginning. This corrected survey makes no mention of passing the Harvey Northeast corner.

Ford continued his testimony concerning the W. F. Rogers original survey made by Russell in 1904. It began at the Northwest corner of the Wadham Survey, proceeded along the West line of the Wadham and the Steele surveys to the Northeast corner of the W. K. Estill Survey; thence 133 varas "to the Southeast corner of the Harvey Survey", thence North to the "Northeast corner of the Harvey Survey", thence 15 varas to the Southeast corner of the Varnell Survey, then along the East line of the Varnell Survey and around to its place of

beginning. (Emphasis supplied). The 133 varas from the Northeast corner of the Estill places the Southwest corner of the Rogers at the point "H" on the plat and the 15 varas West of the Southeast corner of the Varnell would place the Northeast corner of the Harvey at point "G". However, both "calls" call for adjoinder with the Southeast and the Northeast corner of the Harvey. The Rogers Survey, now owned by the appellee, must depend upon a determination of the Southeast and the Northeast corner of the Harvey as establishing the Rogers west line as it calls for adjoinder with the Harvey. Braumiller v. Burke, 112 Tex. 387, 247 S.W. 501 (1923). A critical point of this boundary dispute, as we see it, then rests upon a re-survey by surveyor Russell of the J. W. Harvey which was made in 1899 and upon which a patent was issued by the Governor of Texas in 1901. This corrected survey began at the same point as the original survey at the Southwest corner of the F. W. Miller survey, proceeded East at 1000 varas to the Southeast corner of the Miller, and then at *1380 varas* (instead of 1465 varas as called for in the original survey) a stake "from which a P. O. 20. in dia mked x brs. N. 14°W 7 vrs."; thence South 761 varas to a stake in the North line of the W. K. Estill, and then West 380 varas to the Southeast corner of the Thomas Survey, and so on around to the place of beginning. This East line of the Thomas Survey is due South of the East line of the F. W. Miller Survey. In the corrected survey by Russell he calls for 380 varas East from the Southeast corner of the Miller to the Northeast corner of the Harvey and then calls for 380 varas West from the Southeast corner of the Harvey to the Southeast corner of the Thomas. This would establish the East line of the Harvey at the line "AB". There are no calls for an adjoining survey on the East line of the Harvey because the original and corrected survey of the Harvey were both senior to the W. F. Rogers. The corrected survey calls for 131 acres which is substantially the correct amount of acre-

age for the tract as called for in this corrected survey.

Appellant claims that the corrected Harvey survey, calling for 1380 varas, is a mistake, and should have been 1465 varas to the line "GH" as was called for in the original Harvey. Appellant says that the distance calls in the W. F. Rogers of 133 varas and 15 varas would place the East line of the Harvey at the line "GH" as contended by them. As further evidence to substantiate appellant's contention, appellant insists that the distance call of 1465 in the original survey and 1380 varas in the corrected survey to a stake, describes the same witness-tree in both descriptives. However, no one was able to locate this witness-tree, or any natural, or artificial objects, nor could they find any stakes or marks on trees at either the lines "AB" or "GH" on the plat.

A patent was issued by Joseph J. Sayers, Governor of the State of Texas, to J. W. Harvey (1901) for 131 acres of land describing Harvey's East line as being at the line "AB". Harvey conveyed this property with this corrected survey description calling for 131 acres to Moore (1902); thereafter, Moore conveyed the same property with the same description to Alice Miller (1917) and thereafter Alice Miller conveyed the property to Salome Wofford, the appellant (1932), using the field notes of the corrected survey and the same description as contained in the original patent. Appellant never complained of such description or the recital as to acreage until the filing of this law suit. The Rogers Survey which was junior to the Harvey Survey and to all other surveys surrounding it, called for adjoinder with each and every survey surrounding it, as well as defined courses and distances.

Ruben Koether, an engineer and registered public surveyor called as a witness for the appellee, testified in attempting to follow the footsteps of the original surveyor, that the East line of the Harvey is at the line "AB" because such Rogers Sur-

vey being junior in character to all surveys which surround it, calls for adjoinder with the Harvey and the corrected Harvey Survey places the East line of the survey at the Line "AB". All of the conveyances of appellee's land, beginning with the original Rogers Survey through the various successors in the chain of title, use the same original Rogers Survey, which calls for adjoinder to the Harvey's Southeast and Northeast corners.

■ Appellant's contention is that point "G" is based upon the original survey of the Harvey; however, this was later cancelled and corrected and a patent issued on the corrected notes for a call to point "A". Appellant's contention is that the original Parker Survey also called for the Northeast corner of the Harvey to be at Point "G"; however, this was also cancelled and a corrected survey and patent was issued to Varnell without mention of the Harvey Survey in any respect. Appellant's contention is that the Northeast corner of the Harvey is at Point "G" based upon the corrected survey which calls for a course and distance to Point "A", but describes the same bearing tree as the one in the original survey; however, this was only circumstantial evidence of a possible mistake by surveyor Russell. The mistake could have been the bearing tree as well as the distance. The surveyor, Russell, corrected the survey for a call of 380 varas to point "A" on the North and made the same correction on the South of 380 varas to the Thomas, and then corrected the acreage from 160 to 131 acres. This is much stronger evidence that the mistake, if any, was made in the call to the bearing tree, rather than two different calls for distance and the call for a reduction in acreage. In the absence of any fixed natural or artificial markers, the call for course and distance must control. Harvey accepted a patent from the State of Texas under the corrected field notes, thereby losing all right to any additional area embraced in the prior field notes. Miller v.

Yates, 122 Tex. 435, 61 S.W.2d 767 (1933); Stanolind Oil & Gas Co. v. State, 114 S.W. 2d 699 (Tex.Civ.App.1938); Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 22, 133 S.W.2d 767, 145 S.W.2d 569 (1939, Reversed on other grounds). The assignee of the original patentee is bound to the limitation of the acreage described in the patent. Thomas v. Cline, 135 S.W.2d 1018 (Tex.Civ.App.1940).

■ The two calls in the Rogers Survey of 133 varas on the South and 15 varas to the Southeast corner of the Varnell fall short of the line "AB". However, both calls call for the Southeast and Northeast corner of the Harvey. The call for a corner of the adjoining survey is superior to the call for course and distance where the boundary line has been established. This is true even though the extension of the line of the Rogers to close with the Harvey would convey more land than the quantity called for in the Rogers Survey. Moore v. Stewart, 7 S.W. 771 (Tex.Sup.Ct. 1887); Fagan v. Stoner, 67 Tex. 286, 3 S.W. 44 (1887); Freeman v. Mahoney, 57 Tex. 621 (1882); Montague County v. Clay County Land & Cattle Co., 80 Tex. 392, 15 S.W. 902 (1891); Wyatt v. Foster, 79 Tex. 413, 15 S.W. 679 (1891); McAnninch v. Freeman, 69 Tex. 445, 4 S.W. 369 (1887); Woods v. Robinson, 58 Tex. 655 (1883); Morrill v. Bartlett, 58 Tex. 644 (1883), and other cases cited at 7 Tex.Jur. pp. 181–182, Boundaries, § 46, notes 12 and 13.

There was testimony pro and con of an old existing fence between the Harvey and the Rogers. The testimony was to the effect that the fence was rolled up and disposed of in 1935, as it was of no value to either party and might damage the livestock using both tracts of land. After this law suit was filed the appellants erected a new fence along the line "GH", contending that the old fence was on this same line. The appellants sought to establish by the jury's determination that the old fence line separating the Harvey and the

Rogers was along the line "GH" and had been recognized by the parties as being the true East boundary of the Harvey. The jury chose to believe appellants' witnesses that an old fence did exist, but they found that the old fence was not located along the line "GH" where the present existing fence now runs.

We have carefully reviewed all of the evidence in the record. We find that there is sufficient evidence to support the findings of the jury that the East line of the Harvey is at line "AB" as contended by the appellee Agnes F. Miller and that such answer is not against the great weight and overwhelming preponderance of the evidence. Appellants' Points 1 through 4 are overruled.

Appellants' fifth point complains of the action of the trial judge in excluding from the jury a deed of acquittance from the State to J. W. Harvey, his heirs and assigns, dated March 10, 1960. We overrule this point.

The occasion for the deed of acquittance is unusual. The original survey of the J. W. Harvey made by Russell in 1886 called for its North line to begin at the Southwest corner of the Miller and run North 70° East 1465 varas to a stake, calling for a witness-tree, a 20″ post oak and giving bearing and distance to it. In the re-survey Surveyor Russell shortened the distance on the North line but gave the same identical call for the same or apparently the same witness-tree. Appellants' surveyor Ford re-surveyed the Harvey in 1959 after the law suit had been filed. This re-survey was filed of record in the Surveyors' Records of Lavaca County and subsequently accompanied appellants' application for a deed of acquittance to the General Land Office. The deed of acquittance undertakes to re-establish the North line of the Harvey at Point "G" as set forth in the original survey, but it does not mention the witness-tree as a reference to the Northeast corner of the Harvey as mention-

ed in the original survey of 1886 and the corrected survey of 1889.

The trial court submitted an issue to the jury, to which there was no objection, inquiring if the stake for the Northeast corner of the Harvey in the Russell field notes was 1465 varas East of the Harvey Northwest corner, the place of beginning. (This would be Point "G" on the plat). To this question the jury answered "No". There was ample evidence to sustain the jury's findings. If the objects, natural or artificial, cannot be found on the ground, or their previous location accounted for, then course and distance will be followed. This would seem to be the rule of unavoidable necessity, for if you cannot find the objects called for in the field notes, nor ascertain where they were previously located, there would be no other guide to follow than course and distance. It is evident, therefore, that the area of the tract of land patented to Harvey in 1901 did not exceed the quantity called for in his original survey. By accepting this patent, which called for only 131 acres, Harvey surrendered claim to any land included in the original survey that lies without the boundary of the original patent based on the corrected survey. Miller v. Yates, supra.

Under these facts, Art. 5421c–1 Revised Civil Statutes, could afford appellants no relief. That statute does not authorize the Commissioner of the General Land Office to convey by deed of acquittance vacant or unpatented land but only authorizes him to collect for the State the price for excess acreage included within the boundaries stated in the patent and thereby remove the cloud on patentee's title. A deed of acquittance is not intended to be a muniment of title. Foster v. Duval County Ranch Co., 260 S.W.2d 103 (Tex.Civ.App.1953). Had the jury determined that the East line of the Harvey was at "GH" and that excess acreage existed,

a deed of acquittance acquired subsequent to this law suit would have been proper.

■ Whether the north line of the Harvey was 1465 varas and the survey of 1886 conveyed 160 acres, or was only 1380 varas as called for in the 1901 patent and contained 131 acres, the State was paid for all acreage within the area described in the patent. There was no excess. The deed of acquittance could not add 17.83 acres as excess and therefore it had no way to establish the common boundary line between the Miller and the Harvey surveys.

■ Art. 5421c–1, R.C.S. vests in the Commissioner the duty of determining if it "appear that such excess actually exists and that the applicant is entitled to the benefits of the law", the Commissioner shall execute the deed of acquittance. The effect of such deed and its admissibility has not been directly adjudicated. Here the quantity of land in the Harvey was in dispute. The survey by Ford and the application for the deed of acquittance were made after the dispute arose and the lawsuit filed. The determination by the Land Commissioner was a determination of an ultimate issue of this law suit and was made ex parte. Duward Gail Ford, a licensed surveyor, who testified for appellant, offered in evidence his field notes and testified how he arrived at the distances for the description in the deed of acquittance. The jury had the benefit of and received the same evidence that was received by the Commissioner to make its own determination of the East boundary of the Harvey. Therefore, the effect of the deed of acquittance would be repetitious of the testimony already in evidence. Town of Jacksonville v. Pinkard, 40 S.W.2d 841, (Tex.Civ.App.1931 err. dism.) If error there was, it is harmless.

■ Appellant's sixth point of error complains of the trial court's refusal to re-open the evidence and introduce the deed of acquittance after the appellee's attorney had argued to the jury that the original patent from the State of Texas showed that the East boundary of the Harvey was exactly the same as contended by the appellee. After the appellee had completed his opening argument, appellant requested permission to reopen the case for the purpose of introducing the deed of acquittance so that the jury would have facts and information to the effect that the patent from the State of Texas was not the only instrument from the State of Texas that had been issued concerning this property, and not the only instrument that located the disputed boundary. Appellee claims that his comment concerning the patent was a reasonable, fair and accurate statement. It is largely a matter of discretion with the trial court whether additional testimony shall be allowed after the evidence has been closed. 56 Tex.Jur.2d § 120 p. 467; Rule 270 T.R.C.P.; Lubbering v. Ellison, 342 S.W.2d 796 (Tex.Civ.App.1961).

■ We hold that the trial court did not abuse its discretion in refusing to allow the appellant to reopen their case. The trial judge had already correctly ruled that such deed of acquittance was not proper evidence, and the statements of counsel for appellee to the jury were not outside the record, or such a provocation that would cause the trial judge to reconsider his previous ruling.

Appellant conplains of the exclusion of the proof that Garland Miller, (deceased), "recognized" the old fence line between the Harvey and Rogers Survey as their common boundary. Wofford testified that he knew of no dispute as to the boundary between these surveys.

Counsel asked if witness Wofford and Garland Miller (deceased) ever had any kind of agreement about the location of the boundary. The trial court refused to let the witness answer, sustaining an objection that it would be hearsay and would call for a "verbal agreement regarding a piece of land". On a Bill of Exception wit-

ness Wofford testified that he and Garland Miller recognized the old fence line:

"Q. All right, and had Garland reorgnized that?

"A. Why, certainly.

"Q. And in conversation had you all referred to that as boundary line between you?

"A. That's right, he asked me if I would be willing for him to tear it, (the fence) down."

■■■■ A boundary agreement may be made by oral agreement. Gulf Oil Corporation v. Marathon Oil Co., 137 Tex. 59, 152 S.W.2d 711 (1941), and the cases cited therein. However, the location of the boundary line must be in dispute, doubt, or its existence uncertain. Foster v. Duval County Ranch Co. supra. In Voigt v. Hunt, 167 S.W. 745 (Tex.Civ.App.1914), Judge Jenkins wrote:

"Hence it is essential to the validity of an oral agreement to fix a boundary line that such line be in dispute, and that its true location be unknown to the parties making the agreement. Otherwise the fixing of such boundary by oral agreement would be passing title to real estate contrary to the statute of frauds. (Citing cases)."

Moreover, the Wofford testimony is not sufficiently definite to establish an agreed line. Wright v. Lassiter, 71 Tex. 640, 10 S.W. 295. (Sup.Ct.1888). Appellant's seventh point of error is overruled.

■■■ Appellant's eight point complains of the manner of submission of the first special issue.

"Do you find from a preponderance of the evidence that the East line of the J. W. Harvey Survey as located by H. H. Russell on July 3, 1899, was the line AB as shown on plaintiff's exhibit No. 23. Answer 'Yes' or 'No'."

"We the jury answer 'Yes'."

"In this connection, you are instructed that such A B line is defined as the line which begins at a point N. 70 degrees E. 380 varas from the Southeast corner of the Barnes lands in the F. W. Miller Survey and runs S. 20 degrees E. to the north line of the Estill Survey."

The objections were that it constituted a general charge and was a charge upon the weight of evidence. The instructions given were similar to those passed on by Judge Speer in Humble Oil & Refining Co. v. Owings, 128 S.W.2d 67 (Tex.Civ.App. 1939) which he there approved. The objection that the submission was a general charge is overruled.

Judge Speer points out in the Owings case that a submission that requires answers which will be referrable to a map is "fraught with dangers", but he comments that the other modes of submission to clarify the verdict are likewise unsatisfactory, if there is a lack of natural or artificial objects as reference points. Such a submission comes near being a comment on the weight of the evidence. White v. Haynes, 60 S.W.2d 275 (Tex.Civ.App.1933 writ dis.) Certainly, a submission in the form approved in the Mid-Kansas Oil & Gas. Co. v. Burton case, 87 S.W.2d 338 (Tex.Civ.App. 1935, Dism.Agr.), i. e., an inquiry as to which of two lines on the designated plat constitutes the true boundary, is less subject to criticism than a question which mentions only one line. But here, as in the Owings case, supra, the exhibits showed the two lines contended for by the opposing parties. Attorneys, in argument, referred to both lines so that the jury had the benefit of the contentions of defendants as well as those of plaintiffs and understood that it had a choice. This form of submission having been approved in the Owings case, we see no error in the submission here. Appellant's point is overruled.

Point 9 of Appellant's assignment complains that the trial court erred in refusing

to grant a new trial because the verdict of the jury does not make sufficient findings upon which to establish the boundary between the two surveys. The issue complained of by the appellant inquires as to where H. H. Russell (the original surveyor) located the East line on July 3, 1899. Appellant states that this survey was made for a Mr. Moore, whereas, the original survey of 1886 was made by virtue of a preemption certificate for 160 acres held by Harvey. We fail to find any evidence that the survey of July 3, 1899, which cancelled the original survey and corrected such survey, was made on behalf of Mr. Moore. Following this corrected survey of 1899 by Russell, a patent was issued to Harvey in 1901, and subsequently, Harvey transferred the property to Moore in 1902.

▅▅▅▅ Article 5305, R.C.S.1925, makes it the duty of the surveyor to correct errors in his field notes for the General Land Office. In Miller v. Yates, supra, it is held that Revised Statutes of 1879, impose a duty on the Land Commissioner to cause the surveyor or party at interest to furnish corrected field notes when incorrect field notes were presented to the Commissioner. The Land Commissioner's acceptance of the corrected field notes fixes its boundaries and a subsequent purchaser is bound thereby. Appellants' contention in the law suit was that the corrected survey was in error and that because surveyor Russell called for the same witness-tree in his survey of 1899, he actually intended that the East line of the Harvey was not to be located at the line "AB" on the plat. This corrected survey would of course control, unless the appellant could prove that such survey was in error. This he failed to do. With the aid of the trial court's instructions, the jury made sufficient findings to locate the East line of the Harvey. Appellants' point 9 is overruled.

Appellant complains of the refusal of the trial court to grant a new trial based on newly discovered evidence. At the hearing on the motion for new trial the appellant presented the testimony of Roger Tuttle, a step-son of W. F. Rogers, the original owner of the Rogers Survey. Tuttle testified that after the trial of the main case, appellant approached him and asked him if he knew the location of the old fence line that separated the Harvey and the Rogers Surveys. Tuttle testified that he knew where it was, and that he could find the old fence line. Tuttle accompanied Wofford to the property and walked to a point approximately half way between the north and south line of the Harvey Survey near the East boundary of the Harvey Tract and found a sand hill. He testified that over the hill they would find a gap and the fence that separated the two properties. Tuttle testified further that upon reaching this location they found two trees with wires and wire box on them some twenty feet East of the existing fence. (This existing fence was a new fence placed on the property by appellant after the law suit had been filed and is located on the plat at the location marked "GH"). Other tree marks were discovered and pictures of these marks were taken and offered as exhibits to the court at the hearing on the motion for new trial. Appellant testified that he had known Tuttle for some time, but not too well. Tuttle stated that he did not talk to the appellant or to the appellant's witnesses concerning this case until after the case was tried. Tuttle lives in Halletsville, the county seat of Lavaca County where this case was tried.

During the trial of the law suit, a dispute arose concerning the existence of a fence supposedly separating the Harvey and Rogers tracts. The appellee's witnesses did not recall any fence existing between the two tracts. Appellants' witnesses testified positively that a fence had existed between the two tracts and that the old fence was located approximately on the same line or a few feet east of the new fence. The jury found that prior to 1935 there was a common fence dividing the Harvey and the Rogers Survey but that the fence line constructed by the appellants as the east line of their property was not constructed on the

old fence line, and that the parties and their predecessors in title did not consider, recognize or acquiesce in the fence line as the common boundary line between the Harvey and Rogers Survey.

It is settled law in Texas that the refusal to grant a new trial on the ground of newly discovered evidence rests within the sound discretion of the trial court and that unless such discretion has been abused, the court's ruling will not be disturbed upon appeal. Morriss v. Centex Paving Company, 348 S.W.2d 790 (Tex.Civ. App.1961, wr. ref. n. r. e) The courts have followed certain rules concerning the justification to the granting of a new trial for newly discovered evidence. 41 Tex.Jur.2d § 105, p. 253–54.

> "To justify the grant of a new trial it generally must be shown that the evidence was unknown to the movant before the trial, that his failure to discover it was not due to his want of diligence, that its materiality was such as would probably bring about a different result on another trial, and, generally, that it was competent, and not merely cumulative, corroborative, collateral, or impeaching." (See cases cited thereunder).

We believe that such evidence was cumulative of the evidence adduced at the trial, that the evidence was not such that would probably bring about a different result on another trial, and lastly, we do not believe that appellants have shown proper diligence to obtain the evidence before the trial. The trial court did not abuse its discretion in refusing to grant a new trial to the appellants. New Amsterdam Casualty Co. v. Jordan, 359 S.W.2d 864 (Sup.Ct.1962). Appellants' point is overruled.

Appellants assign as error of the trial court its method of partitioning the J. W. Varnell Survey because the appellant was not awarded her proportionate share of the survey; that the description of the tract of land allotted to Salome Wofford is

patently erroneous; and that a portion of the land contained in the part set aside to Salome Wofford is not within the Varnell Survey.

The partition action was tried before the court without the intervention of a jury. The parties to the suit agreed with reference to the land sought to be partitioned; that the land was susceptible to partitioning in kind; they agreed to waive the appointment of commissioners of partition; and agreed that Lavaca County Surveyor R. H. Koether would furnish a survey of the lands to the court.

The court recites in his judgment that the defendant Salome Wofford owns an undivided one-sixth interest in the lands to be partitioned; that the shares and interests awarded, set aside and allotted to the various parties, accord to each party the proper value of his share of interest in the lands; and that all of the parties are hereby accorded equal and fair treatment as to said partition.

The appellee admits that the appellant was awarded 18.653 acres which is the same awarded to the other owners of a one-sixth interest. Appellant contends that the erroneous calls deprive her of two acres of land. We find that the description set forth in the judgment does not correspond with plaintiff's Exhibit #23 and #12, maps of the partitioned property; or with plaintiff's Exhibit #14, field notes for the Salome Wofford 18.653 acre partitioned tract; or with the court's Exhibit "A" attached to the judgment, which is likewise a map of the partitioned property. All of these maps and exhibits were prepared by Koether, the court's surveyor in partition. All of this evidence calls for the east and west line of Salome Wofford tract to be different from that called for in the trial court's judgment. We find no evidence relating to the calls describing the appellant's 18.653 acre tract as set forth in the judgment and we have not been referred to any by the appellee. The judgment also erroneously calls

the "Southwest" corner of the Wofford tract the "Northeast" corner of such tract. A further examination of the description in the partitioned tracts discloses erroneous calls for course and distance in the Henry Kallina 55.96 acre tract at the North end of the partitioned lands.

The partition aspect of this suit was tried before the court without the intervention of a jury. The appellant made no request for findings of fact or conclusions of law concerning the partition of the lands. We find no basis on which to reverse the trial court's judgment nor do we see any reason to do so. It is our duty to affirm such judgment if the statement of facts support it. It is also the duty of the Court of Civil Appeals, however, to enter the judgment that should have been entered by the trial court where it appears that upon the face of the record that modifications in the judgment should be made where the justice of the case requires it. C. R. Cummings & Co. v. Masterson, 42 Tex.Civ.App. 549, 93 S.W. 500 (1906 wr. ref.) 4 Tex.Jur. 2d 880, p. 469–70. It appears to us that unless such judgment is modified to correspond with the description as contained in the exhibits and evidence in the record, a subsequent suit would be necessary to correct the clerical or other errors that appear in the judgment. Each partitioned tract is dependent upon each other partitioned tract, and a mistake in the description of one could affect all the others, and if the judgment is in error, the accumulation of errors could deprive the appellants of their rightful interest in the partitioned lands.

In view of these discrepancies contained in the judgment, which do not coincide with the undisputed evidence in the record before us, the judgment of the trial court is here modified to change the legal description of the lands set aside to Salome Wofford in partition. Beginning in such judgment with paragraph two of the decree and ending just prior to paragraph which follows such description and described as

"SECOND", the following modified description to correspond with the evidence for calls of course and distance is here substituted for the description contained in such judgment.

"2. There is hereby set aside, awarded and allotted to said SALOME WOFFORD, and she shall from henceforth have, hold, possess and enjoy, in severalty to herself, as her separate property, in fee, subject to the royalty interest of L. Y. Feinstein, the following:

"*FIRST*: All that certain tract or parcel of land, situated in Lavaca County, Texas being a part of the G. W. Varnell Survey, and being a part of the 80.389 acre tract of land conveyed by W. F. Rogers to Friench Simpson by deed dated February 21, 1905, recorded in Volume 34, pages 213–214, Lavaca County Deed Records (being described in such deed as an 80 acre tract of land, more or less, but which was found to contain 80.389 acres, more or less, upon resurvey), and a part of the same land described in a deed from Mrs. Alice Miller et al, to Garlan S. Miller et al., dated November 14, 1932, recorded in Volume 116, pages 316–317, Lavaca County Deed Records described by metes and bounds as follows, to-wit:

"BEGINNING at a point in the west line of the G. S. Miller land in the W. F. Rogers Survey and which point of beginning is in the East line of the G. W. Varnell Survey and which point of beginning is South 20° East 2009.24 feet (723.3264 varas) from a 1¼ in. galvanized iron pipe at the N.E. corner of said Henry Kallina 24.43 acres tract and the N.E. corner of the G. W. Varnell Survey and the N.W. corner of the W. F. Rogers Survey;

"THENCE S. 20° E. 601.87 feet (216.-6732 varas) with the Garlan S. Miller Line to a 1¼ in. galvanized iron pipe set for the S.E. corner of the Varnell Survey and an interior corner of the

W. F. Rogers Survey for the S E. corner of this tract;

"THENCE S. 70° W. 1338.42 feet (481.8312 varas) to the S.W. corner of the G. W. Varnell and the S.E. corner of the F. W. Miller original surveys for the S.W. corner of this tract;

"THENCE N. 20° W. 612.37 feet (220.4532 varas) to a point in the West line of the G. W. Varnell and the existing East fence line of the C. L. Barnes lands in the F. W. Miller Survey for the N.W. corner of this tract;

"THENCE N. 70° E. 1338.42 feet 481.8312 varas) to the place of beginning in the East line of the G. W. Varnell for the N.E. corner of this tract, containing 18.653 acres of land, more or less, as surveyed by R. H. Koether, registered land surveyor of Yoakum, Texas, in January, 1957, and which is shown and designated as the Salome Wofford 18.653 acres shown on said map attached and marked 'Exhibit A';

"And subject to the interest in oil royalty, gas royalty and casinghead gas and gasoline royalty, and royalty from other minerals or products that was conveyed by Garlan S. Miller and wife, Agnes Miller, to L. Y. Feinstein by royalty conveyance dated December 17, 1948, recorded in Volume 159, page 255, Lavaca County Deed Records; and subject to all of the terms and conditions of such royalty conveyance.

"Reference to said deeds, map and royalty conveyance and each instrument herein mentioned and to the records thereof is here made for all pertinent purposes."

There are several obvious errors and erroneous calls contained in the judgment partitioning the Henry Kallina 55.96 acre tract at the north end of the partitioned lands. The description in the judgment at the fourth call of the South line of the Henry Kallina tract in the W. F. Miller Survey erroneously states:

"Thence S. 20° W. 28.56 feet (102.86 varas) with the existing fence line to a corner post in the west line of the F. W. Miller survey for the upper southwest corner of this tract; being the northwest corner of the C. L. Barnes land";

Plaintiff's exhibits #23 and #12 (maps) and plaintiff's exhibit #16 (field notes) and the court's exhibit "A" require that judgment should be modified so that this erroneous call would be changed and the following call is hereby substituted:

"Thence S. 70° W. 2856.7 feet (1028.412 varas) with the existing fence line to a corner post in the west line of the F. W. Miller Survey for the upper Southwest corner of this tract; being the Northwest corner of the C. L. Barnes lands;"

In the same description of the same lands on the sixth call a clerical error appears wherein the call states in the judgment:

"Thence North 70 degrees East 3195.12 feet (1150.2432 varas) along the aforesaid M. Townsend 1/3 League line to the place of beginning, containing within said bounds 55.96 acres of land, more or less, as surveyed by R. H. Koether, registered land surveyor of Yoakum, Texas, in January, 1957, and which is designated as the Henry Kallina 31.53 acres and the Henry Kallina 24.43 acres on the map attached hereto and marked 'Exhibit A';"

And it should read, and is hereby modified to read:

"THENCE North 70 degrees East 4195.12 feet (1510.2432 varas) along the aforesaid M. Townsend 1/3 League line to the place of beginning, containing within said bounds 55.96 acres of land, more or less, as surveyed by R. H. Koether, registered land surveyor of Yoakum, Texas, in January, 1957, and

which is designated as the Henry Kallina 31.53 acres and the Henry Kallina 24.43 acres on the map attached. hereto and marked 'exhibit A';" (Emphasis supplied to show errors and corrections)

The judgment of the trial court, as modified, is affirmed.